# EVANSVILLE & TERRE HAUTE RAILROAD COMPANY *v.* McKINNEY.

[No. 4,558. Filed January 10, 1905.]

1.  PLEADING.—*Contracts.—Alleging One Kind.—Proving Another.*—
    Where a special contract is pleaded, a recovery can not be had upon
    an implied contract; nor can a parol contract be alleged and a re-
    covery had upon a written contract.  p. 403.

2.  PLEADING.—*Carriers.—Common-law Liability.—Right of Carrier to
    Exact Contract as Condition Precedent to Carriage.*—Where, in an
    action against a carrier for damages to a race-horse, the plaintiff

shows in his complaint that he shipped such horse over defendant's road—the only accessible one—and that as a condition precedent to such carriage he was compelled to sign a contract practically exempting such carrier from liability for negligence, and arbitrarily limiting the value of such horse to a small sum; that he was given no opportunity of shipping on terms of defendant's common-law liability as carrier, and that such horse was injured through defendant's negligence, such complaint is in tort and states a cause of action on the common-law liability of such carrier. p. 404.

3. TRIAL.—*Instructions.*—*Theory of Case.*—Where plaintiff sues in tort on defendant's common-law liability as a carrier, instructions by defendant on the theory of contract are properly refused, a plaintiff being entitled to a trial on the issue tendered. p. 407.

4. CARRIERS.—*Contract.*—*Valuation of Property.*—*Consideration.*—A contract between a carrier and shipper restricting such carrier's common-law liability must have some consideration besides the acceptance of the goods; and such contract, when fair and reasonable, and fairly secured, is valid. p. 408.

5. NEW TRIAL.—*Evidence.*— *Sufficiency.*—Where the evidence in a case by a shipper against a common carrier on such carrier's common-law liability, shows that such carrier's agent was not allowed to take plaintiff's horse except upon terms greatly restricting the common-law liability; that no choice of rates was offered; that the value of the property was not mentioned, and that no limitation of liability was referred to, such evidence supports a verdict assessing damages under such common-law liability. p. 409.

From Posey Circuit Court; *O. M. Welborn,* Judge.

Action by Clate C. McKinney against the Evansville & Terre Haute Railroad Company. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*John E. Iglehart, Edwin Taylor* and *G. V. Menzies,* for appellant.

*J. E. Williamson* and *A. J. Clark,* for appellee.

ROBY, J.—Action for recovery of damages on account of injury to live stock delivered to appellant for transportation. Appellee had judgment for $1,000. The complaint was in two paragraphs, to each of which a demurrer for want of facts was overruled, such rulings being assigned as error.

1. The parties are at variance as to the theory of the complaint, appellant claiming that it counts upon the breach

of a written contract, and appellee that it counts upon the common-law liability of a common carrier. The shipper can not set up a special contract for carriage and recover as upon the implied contract. *Sanders* v. *Hartge* (1897), 17 Ind. App. 243-250; *Jeffersonville, etc., R. Co.* v. *Worland* (1875), 50 Ind. 339. Neither can he rely upon a parol agreement and recover upon proof of a written contract. *Baltimore, etc., R. Co.* v. *Ragsdale* (1896), 14 Ind. App. 406; *Indianapolis, etc., R. Co.* v. *Forsythe* (1892), 4 Ind. App. 326. The effect of the theory ascribed to the pleading is not confined to the questions arising upon the demurrer to it, but extends throughout the case.

2. It is averred in the first paragraph that appellant was a common carrier; that appellee was the owner of a certain race-horse of the value of $2,500; that another person was the owner of another certain horse; that appellee and said person entered into a contract with appellant by which it was agreed, in consideration that they would ship their horses from Evansville to Vincennes and return, that a charge of $20 for the round trip would be made, $10 of which was to be paid by each of said parties; that the horses were safely carried, and delivered at Vincennes, and the freight charges thereon were paid; that when appellee was ready to return—appellant operating the only line between said places—said horses were delivered to appellant, and it required appellee to sign a shipping contract, which was, so far as necessary to the purposes of this appeal, in terms as follows: "Read this contract. Evansville & Terre Haute Railroad and associated lines. Live stock contract. Liabilty limited to the declared valuation by shippers, but not to exceed the following: Each horse or pony (gelding, mare or stallion) mule or jack, $100. * * * And in no event shall the carrier's liability exceed $1,200 per car. Agents are not permitted to receive or ship animals of a higher value than as stated above, unless by special agreement noted hereon, and a proper contract or release is

signed by the owner or shipper thereof.   And it is agreed
between the owner and shipper of these animals and the
said railway company that in case of accident, resulting in
injury to said animals, the value thereof shall in no case
exceed the valuation named above.  Shipments of live stock
in car-loads, or less than car-loads, will only be taken at the
rates named herein, after this contract or agreement shall
have been signed by the company's station agent and the
owner and shipper, by which it is agreed and understood
that such owner and shipper shall load, feed, water and take
care of such stock at its own expense and risk, and will
assume all risk of injury or damage that the animals may
do themselves or each other, by kicking or gouging, suffo-
cating, fright, burning of hay or straw or other material
used for feeding or bedding, or by fire from any cause what-
ever, or by heat, cold, or by changes in weather, or delay
caused by stress of weather, by obstruction of track, riots,
strikes or stoppage of labor.   J. B. Cavanaugh, general
freight agent.   Freight office, Evansville & Terre Haute
Railroad and associated lines.   Vincennes, 10, 14, 1900, 11
p. m.   Received of C. McKinney two horses to be delivered
to C. C. McKinney at Evansville, at the following rates: two
horses $10.   In consideration of which, and for other valu-
able considerations, it is hereby mutually agreed that said
company shall not be liable for loss of live stock by jumping
from the cars, delay of trains not caused by negligence as
aforesaid, or any damage said property may sustain, except
such as may result from a collision of the train with other
trains, or when the cars are thrown from the track in course
of transportation, and, in this case, the company upon whose
road the accident, loss or damage shall occur shall be liable
therefor, and no suit shall be brought, or claim made,
against any other company forming a part of the route, for
such loss or damage (it being expressly understood and
agreed that the responsibility of this railroad company shall
cease upon delivery of said property to its connecting line,

unless otherwise agreed to in writing, and signed by the respective parties hereto), and that the rules and regulations printed above are an essential part of this contract. Evansville & Terre Haute Railroad Co. By E. L. Cory, agent. C. C. McKinney, owner."

It is further averred that the $20 paid for transportation was the price appellant charged, and all that was asked or demanded by it; that appellees were not informed at any time of any other or different rate; that the valuation named in said contract was printed in the rules and regulations and arbitrarily fixed by appellant, and that appellee was required to sign said contract as the only condition on which appellant would ship said property; that it was the duty of appellant to receive and ship said property for reasonable hire, to wit, the sum of $10, which sum defendant demanded and the plaintiff agreed to pay; "that said sum was the only consideration moving from the plaintiff to the defendant for such services, and the only consideration moving from the defendant to the plaintiff was its agreement to transport said property. * * * No other or different consideration obtained between the parties for any purpose or purposes whatever;" that no consideration of any kind existed for reducing the value of said horse to $100; that the value of said horse was not represented by appellee to be $100; that he was not called upon to and did not state its value; that appellant knew the true value of the horse; and that the appellant disregarded its duty and so negligently conducted its business as to cause the car in which said horse was being shipped to be thrown from its tracks in the course of transportation, and that thereupon said car took fire, and said horse's leg was broken, rendering him of little or no value. Wherefore, etc.

The second paragraph only differs from the first in that it sets up negligence upon the part of the appellant in permitting stock to run upon its tracks, which, being run over, caused the derailment of the train.

In *Lake Erie, etc., R. Co.* v. *Holland* (1904), 162 Ind. 406, the same form of pleading was adopted by the plaintiff. The court said: "As we understand the paragraphs —and there is really no difference between them in respect to the general questions—they proceed upon the theory that the plaintiff was compelled by his situation to assent to what purports to be a special contract of carriage under such circumstances and conditions as rendered the special stipulations void. He alleges that he did not choose between two rates of freight; that he did not know he had a right so to choose; that appellants had no such thing as two rates of freight for the transportation of car-loads of horses from Kokomo to Indianpolis; that he was required by appellant to sign the bill of lading exhibited, exempting them from liability, as a condition precedent to the shipment of the horses; and that he received no consideration for relieving appellants of their common-law duty. * * * We conclude, therefore, that the facts set forth * * * show that the pretended special contract of shipment was void, and left the transaction standing precisely as if no contract, other than the one implied by law, had been attempted by the parties. So it can not be accurately said that the paragraphs were founded on a written contract, for no such thing existed in this case." Applying the rules thus stated to the complaint in this case, we are constrained to hold that the suit is based upn the common-law liability, the contract being only set up to be destroyed.

3. Appellant, by various answers, set up the execution of a contract in terms as above indicated. The facts averred in the complaint being sufficient entitrely to destroy the alleged contract, it follows that instructions assuming it to be in force were correctly refused if there was evidence tending to sustain such allegations of the complaint, since the appellee was entitled in said event to a trial upon the issue tendered. The instrument in question contains no recital or statement showing that the rate charged for car-

riage was less than the regular rate, nor that the rate so charged depended upon or was fixed by reference to the valuation of the property described. The language used is not contractual in form, and does not accord with the exercise by the shipper of an unconstrained option in electing to waive any part of the liability imposed by law upon common carriers, while the limitation upon the agent's authority to make any other contract than one containing the limited valuation, except upon conditions not detailed, is not indicative of an opportunity to exercise such option.

4. It is essential to the validity of a contract valuing the property to be transported by a common carrier that there be a consideration therefor other than the acceptance of the goods. *Adams Express Co.* v. *Carnahan* (1902), 29 Ind. App. 606, 94 Am. St. 279; *Lake Erie, etc., R. Co.* v. *Holland, supra.* It is also necessary that the limitation of liability thus created shall be fair and reasonable. *Russell* v. *Pittsburgh, etc., R. Co.* (1901), 157 Ind. 305, 55 L. R. A. 253, 87 Am. St. 214; *Railroad Co.* v. *Lockwood* (1873), 17 Wall. (U. S.) 357, 21 L. Ed. 627; Monographic note, 88 Am. St. 74-91. Where property is thus valued, the valuation being substantial, and not unreasonable, fairly procured, real freedom of choice given without coercion or fraud, such valuation is valid. These requirements are based upon the fact that a common carrier is a public agent by virtue of its occupation *(Russell* v. *Pittsburgh, etc., R. Co., supra);* and that "the advantageous position of the companies exercising the business of common carriers is such that it places it in their power to change the law of common carriers in effect, by introducing new rules of obligation. The carrier and his customer do not stand on a footing of equality. The latter is only one individual of a million. He can not afford to higgle or stand out and seek redress in the courts. His business will not admit such a course. He prefers, rather, to accept any bill of lading, or sign any paper the carrier presents; often, indeed, without

knowing what the one or the other contains. In most cases, he has no alternative but to do this, or abandon his business. * * * The inequality of the parties, the compulsion under which the customer is placed, and the obligations of the carrier to the public, operate with full force to divest the transaction of validity." *Russell* v. *Pittsburgh, etc., R. Co., supra,* quoting from *Railroad Co.* v. *Lockwood, supra;* Monographic note, 88 Am. St. 74-92.

5. There was a conflict between the witnesses as to the facts connected with the receipt of the horses by the appellant and the signature of the instrument set up by the shippers. In view of the notice of the limitations upon the authority of the agent which is given therein and the testimony of McKinney to the effect that no choice of rates was offered, that the value of the property to be transported was not mentioned, and that no limitation of liability was referred to, it can not now be said that there was no evidence tending to support appellee's claim. It follows that the instructions discussed were correctly refused, and that there was no error in overruling the motion for a new trial.

Judgment is affirmed.