STANDARD OIL COMPANY OF INDIANA ET AL. *v.* THOMAS.

[No. 15,632. Filed March 8, 1938. Rehearing denied June 1, 1938. Transfer denied October 18, 1938.]

612

*Miller, Miller & Bredell* and *John W. Macy,* for appellants.

*Nichols & Nichols, Clarence E. Benadum* and *Raymond R. Tanner,* for appellee.

WOOD, J.—This is an appeal from a judgment awarding damages to the appellee for personal injuries alleged to have been sustained by him in an automobile collision, as the result of negligent conduct on behalf of the appellants.

The issues consisted of a complaint in one paragraph and an answer in general denial. The cause was tried to the court and a jury. Appellants filed a motion for judgment on answers to interrogatories and a motion for a new trial. The causes alleged for a new trial and not waived are: that the verdict was not sustained by sufficient evidence; that it was contrary to law; that the damages assessed were excessive; error in giving to the jury each of instructions numbered 1, 2, 5, and 7 requested by appellee; error in giving to the jury each of instructions numbered 6, 9, 17, 18, and 20 by the court of its own motion; and error in refusing to give to the jury instruction numbered 20 tendered by the appellants. We will discuss the errors complained of in the order in which they are presented in appellants' brief.

The appellants submitted thirty interrogatories to the

jury with the request that it be required to answer them in the event it agreed upon a general verdict. Since substantially the whole force of appellants' contention, that the trial court erred in overruling their motion for judgment on the answers to the interrogatories, is dependent upon interrogatory numbered 10 and the answer thereto, it is unnecessary to extend this opinion by setting out all of the interrogatories and answers. Interrogatory numbered 10 and the answer thereto are as follows: "Interrogatory No. 10. Now, if you answer numbers 4 and 6 in the affirmative, did the plaintiff bring his automobile to a full stop at said stop sign, or at any place between said stop sign and the Mud-Hole School crossing?

"Answer: No."

By answer to interrogatory numbered 4, the jury found that at the time of the collision there was a stop sign located on the west side of the north and south highway on which appellee was driving, at a point approximately one hundred feet north of the intersection of said road with state road number 36, on which appellant Freidline was driving east, which sign was placed and kept there by the Indiana State Highway Commission, and by answer to interrogatory numbered 6, the jury found that the appellee, immediately before the collision, was driving south along the north and south road toward the intersection with state road number 36, in a Ford automobile driven by himself.

The appellants insist that since the jury found by its answer to interrogatory numbered 10 that the appellee failed to bring his automobile to a full stop before attempting to pass over the intersection as required by §47-549 Burns 1933, §11182 Baldwin's 1934, previous to its amendment by Acts of 1937, p. 751, he was guilty of negligence *per se*, which negligence contributed to appellee's injuries and under such circumstances he can

not recover; that interrogatory numbered 10 and the answer thereto are in irreconcilable conflict with the general verdict.

Interrogatory numbered 11 and the answer thereto are as follows:

"Interrogatory No. 11. If you answer number 10 in the affirmative, then at what place did the plaintiff bring his automobile to such full stop?

"Answer: 20 to 40 ft."

The appellants insist, that since the jury answered interrogatory numbered 10 in the negative, that it should not have answered interrogatory numbered 11 at all and that it must be ignored in passing on their motion, but the jury did answer interrogatory numbered 11 and it, together with the answer thereto, are in the record before us.

In ruling on this motion we can consider only the pleadings, general verdict, the interrogatories and answers thereto. The general verdict is a finding for the appellee on every material fact and to overthrow it, the answers to the interrogatories must be in irreconcilable conflict therewith. All interrogatories and answers thereto must be considered in determining whether judgment should be given on such answers. It is only when the interrogatories and answers thereto, taken and considered as a whole, are irreconcilable with the general verdict that the former will overcome the latter. In determining whether there is a conflict in the general verdict and answers to interrogatories, every presumption and inference is resolved in favor of the general verdict. Nothing will be presumed or inferred in favor of answers to interrogatories as against the general verdict, and if answers to two or more interrogatories are inconsistent and antagonistic to each other, they nullify and destroy each other and can not control the general verdict. Such con-

flicting answers must be disregarded in ruling on the motion. *Citizens St. Ry. Co.* v. *Hoop* (1898), 22 Ind. App. 78, 53 N. E. 244.

In answer to other interrogatories the jury found that the appellee was familiar with the intersection; that when he was twenty or forty feet north thereof and as he drove south, before entering upon the intersection he looked to the west for approaching traffic on state road number 36; that when appellee did look west, appellant Freidline's truck was three hundred or four hundred feet west of the intersection and that appellee could not see it because of fog and mist; that the appellee and appellant Freidline entered upon the intersection at about the same time; that when the appellant Freidline discovered that the appellee did not intend to stop at the intersection, he did not swerve his tank truck to the north in an effort to avoid hitting appellee's automobile; that the intersection was designated by the Indiana State Highway Commission as a stop intersection and state road number 36 was designated as a preferential highway; that as the appellee passed along the north and south highway he knew of the presence and purpose of the sign; that while the appellee looked to the west for approaching traffic from that direction, he did not see the tank truck of the appellant Freidline, because of the fog and mist; that when appellee first saw appellant Freidline's tank truck they were about twenty feet from each other; that when the appellee first saw appellant Freidline approaching from the west, appellee did not observe Freidline make any effort to reduce the speed of his tank truck or give any indication of slowing down or stopping before entering upon the intersection; that when appellee entered upon the intersection he proceeded straight south over the same until the collision.

To sustain appellants' motion for judgment on the

answers to the interrogatories, the conflict between the answers thereto and the general verdict must have been such that it could not be overcome by any evidence legitimately admissible under the issues and was properly denied, unless the conflict between the answers and general verdict on some material question was beyond the possibility of being removed or reconciled by any evidence legitimately admissible under the issues in the cause.

The complaint alleged in substance that as the appellee was driving his automobile south toward the intersection in question, he was driving at twenty miles per hour; that as he approached said intersection and when about ten feet north thereof, at a point where he could see along and over state road number 36 in an east and west direction, he brought his automobile to a stop, looked to the west for vehicles approaching from that direction toward said intersection and seeing and hearing none, immediately looked to the east for vehicles approaching from that direction toward said intersection and seeing and hearing none, proceeded to drive across same at the rate of speed of ten miles per hour; that he sounded his automobile horn before entering the intersection and continued to sound it as he proceeded across the same; that when he had travelled to the south across said state road number 36, the travelled portion of which was twenty-five feet wide and was south of the center line thereof, the appellant Freidline drove a large, heavy tank truck loaded with gasoline, coal oil and other oils from out a dense and heavy fog, in an easterly direction, at a rate of speed of forty-five miles per hour, striking appellee's automobile; that at the time of the accident and long before, the appellant Freidline well knew that many lateral roads intersected state road number 36; that they were much used and travelled by persons and vehicles coming into

and going off said state road number 36; that the appellant Freidline failed to sound his automobile horn or give any signal of any kind, that he was approaching said intersection in the dense and heavy fog that prevailed at said intersection at the time while operating his tank truck at the high rate of speed aforesaid. These facts, provable under the issues, should be added to the facts found by the jury in answer to the interrogatories, in passing upon this motion. *Rhodius* v. *Johnson* (1899), 34 Ind. App. 405, 73 N. E. 148, §1897, 2 Watson's Works Practice, p. 471.

While, as contended by appellants, the failure of appellee to bring his automobile to a full stop as provided by §47-549 Burns (§11182 Baldwin's), *supra,* before entering upon the intersection, may have been negligence *per se,* this fact of itself would not preclude the appellee from recovery, unless it further appeared from the facts and circumstances disclosed by the evidence that such negligence was a contributing cause of his injuries. *Central, etc., Co.* v. *Wishard* (1916), 186 Ind. 262, 114 N. E. 970; *Keltner* v. *Patton* (1932), 204 Ind. 550, 185 N. E. 270.

The courts have announced general rules which control in many instances and our legislature has enacted statutes for the guidance of automobilists in the operation of motor vehicles on public highways in this state, but neither these rules nor the statutes are unyielding under any and all circumstances; they must be applied in each instance in the light of the facts and circumstances involved in the particular case under investigation. That is to say, the driver of an automobile upon a public highway in this state should exercise reasonable care in its operation, and not assume that because the rules as announced by the court or statutes enacted by the legislature give him certain rights

and preference, he can avail himself thereof with apparent indifference to the safety and rights of other persons using the public highways. The mere fact that one vehicle has the right of way over another vehicle at a street or road intersection does not relieve the driver of the vehicle thus favored from the duty to exercise reasonable care to avoid collision at such intersection. The duty does not rest alone upon the driver on the nonpreferential street. *Kraning* v. *Bloxon* (1937), 103 Ind. App. 660, 5 N. E. (2d) 649, 9 N. E. (2d) 107 (transfer denied Sept. 23, 1937) ; *Gaines* v. *Taylor* (1933), 96 Ind. App. 378, 185 N. E. 297; *Wolf* v. *Vehling* (1922), 79 Ind. App. 221, 137 N. E. 713; *Dennen* v. *Fries* (1931), 93 Ind. App. 109, 153 N. E. 779 (transfer denied October 13, 1931).

In the case of *Blasengym* v. *General, etc., Corp.* (1929), 89 Ind. App. 524, 528, 165 N. E. 262 (transfer denied July 3, 1929), this court said: "It is also the duty of a driver on approaching a street or highway intersection to use reasonable care to discover whether or not there is any vehicle approaching such intersection either from his right or his left. Even though the street or highway upon which he is traveling be a 'preferential' one, it is still his duty to use reasonable care to avoid coming into collision with another machine, though the *quantum* of care may vary with the surrounding circumstances."

Again in *Keltner* v. *Patton, supra,* the Supreme Court said (p. 558) : "The general use of automobiles has, by actual experience, taught the public the risks and hazards of their use, and in case of a collision, as here, the negligence of the party responsible therefor or the negligence contributing thereto, other than clearly exceptional cases, presents a mixed question of law and fact and within the general rule that the question of

negligence or contributory negligence in such cases is for the jury."

When all of the interrogatories and answers thereto, the general verdict, pleadings and facts provable thereunder are considered in the light of the established principles of law above set out, as announced by our courts, we conclude that appellants' motion for judgment in their favor on answers to the interrogatories was properly overruled. As aptly stated by Lairy, C. J., in *Central, etc., Ry. Co.* v. *Wishard, supra* (p. 271), "By the general verdict the jury found that appellee exercised ordinary care, and this court can not say as a matter of law that any of the acts or omissions shown by the answers to interrogatories and relied on by appellants as constituting negligence *per se,* were necessarily required of appellee in the exercise of ordinary care." See also *Chicago, etc., Ry. Co.* v. *Leachman* (1903), 161 Ind. 512, 69 N. E. 253.

Two of the causes relied upon for a new trial were insufficiency of the evidence in fact and law to support the general verdict. Error in this particular is urged on the same claim of appellee's contributory negligence as that just considered in the ruling on the motion for judgment on the answers to the interrogatories. While the evidence is conflicting, there is evidence sufficient to sustain the facts substantially as found by the answers to the interrogatories and also to establish the additional facts provable under the issues substantially as alleged, all as above stated.

There is evidence in the record from which the jury could find, that as the appellee approached the crossing, he first looked to the east when he was about one hundred feet therefrom and saw no vehicles and looked to the west when about sixty feet north of the state road and did not see anything coming; that he was driving eight or ten miles per hour and continued

south, shifted into low gear when about forty feet from the state road and came almost to a stop; that he proceeded in low gear, did not remember what speed he was travelling, was watching for traffic, looked to the right again but neither saw nor heard anything, was pretty close to the pavement when he looked to the right the second time, could not say his front wheels were on the pavement at that time, he saw nothing and started across the road and as he looked up saw the red truck about to strike his automobile, the front wheels of his automobile at that time were to the south of and off the pavement; that the appellant Freidline when four or five hundred feet west of the intersection saw the appellee approaching the intersection on the north and south road; that appellant Freidline was on a preferential highway; that Freidline did not believe there was any duty on his part to do anything to avert an accident, unless he knew that the appellee was not going to stop; that appellee did not stop until he got right down to the stop sign, and appellee continued to go right down to the intersection; that Freidline did not slow down the speed of his truck, he did not think he had to stop, he had a horn but he did not sound it, he observed appellee's rate of speed; that it was not in his (Freidline's) place when he saw appellee pass the stop sign, travelling in the direction of the state road on which Freidline was travelling, for Freidline to sound his horn; that at that time, Freidline was driving his truck at the rate of between forty-five and fifty miles per hour. Upon these facts, it is manifest that the jury was well within its province in determining that appellee's injuries were caused by appellants' negligence and that appellee was not guilty of negligence which contributed thereto.

Appellant Standard Oil Company insists that the evidence is insufficient to establish the existence of the relation of agency between it and its co-appellant Freid-

line, at the time of the collision, and it would have this court say as a matter of law that such relation did not exist. The record does not sustain the appellant Standard Oil Company in this contention. We have carefully examined the evidence on this phase of the case and are convinced, that whether or not Freidline, at the time of the collision, was the agent and servant of appellant Standard Oil Company, engaged in the performance of his duties within the scope of such employment was, under the circumstances as disclosed by the evidence, a question of fact for the jury to determine. *Sargent Paint Co.* v. *Petrovitzky* (1919), 71 Ind. App. 353, 124 N. E. 881. The verdict of the jury was sustained by sufficient evidence and was not contrary to law.

The jury returned a verdict for $6,750 against both appellants. They insist that this amount was excessive. In support of this contention appellants say that "the *preponderance* of the evidence, in fact, conclusively established that he was not totally and permanently disabled." (our italics) ; that there was no evidence introduced at the trial to show appellee's earning capacity, what his wages were at the Chrysler plant at the time of the injury, and what his inability to work meant in loss of money; that therefore the jury acted from prejudice and partiality.

It is true that the evidence does not show the earning capacity of the appellee, but the evidence of the nature, extent and permanency of appellee's injuries is conflicting and of course this court cannot weigh this evidence for the purpose of determining in whose favor it preponderates. This court will take judicial notice of the Carlisle Tables of Mortality showing the probable expectancy of life. *Pittsburgh, etc., Co.* v. *Sudhoff* (1909), 173 Ind. 314, 90 N. E. 467; 2 Henry's Probate Law and Practice, §973. The evidence shows without conflict, that at the time of the injuries com-

plained of, the appellee was 46 years old, in good health and had not' been treated by a physician for fifteen years. By the Carlisle tables he had a life expectancy of 23.82 years. The evidence is also undisputed that appellee had incurred hospital and doctor bills of between $400.00 and $500.00; that most of his life he had been a farmer; that he went to work at the Chrysler plant in New Castle, Indiana, August 21,' 1933, and worked there continuously six days a week from 6:30 o'clock P. M. to 1:30 o'clock A. M. until the date of his injury; that since his injury up to the time of the trial of this cause, he had not performed a day's work. There was evidence from which the jury could find that as a result of the collision appellee suffered a fracture of the spinous process of the seventh cervical vertebrae, resulting in marked traumatic neurosis; that there were lacerations on his head, one on the right side, one in the center and one on the left side, all requiring treatment, a large black and blue place over the right eye; that his hips were bruised and scratched and large black and blue bruises on the shoulders; that his body was sore and ached and pained all over; that it was necessary to bathe appellant with hot water and apply liniment to relieve the pain; that he was taking two or three kinds of medicine; that he could not raise his head from the pillow for three weeks; that his wife and children were required to care for him; that his shoulders and back were sore from the end of his spine to the top of his head; that his body was sore all over and he could not move; that his neck was swollen to twice its normal size, stiff and he could not move it and it remained in this condition for five or six weeks, when the swelling began to subside; that during the six or eight weeks following the injury he got so he could use his hands a little bit, but was sore and stiff; that he could feed himself, but could not wash his face or take his bath;

that during the month after the accident he felt weak and nervous; after getting out of bed he noticed a falling forward of his neck which is gradually getting worse; that there was a numbness in his shoulders and arms all the time and he carries his head forward to relieve the pain in the back of his neck; that there is a numbness and soreness in the spine below the neck; that it started at the skull and run down to the finger tips; that his ears roar all the time and he suffers from headaches; that he is very nervous and does not sleep at night; that his condition did not yield to treatment and was gradually growing worse; that he was permanently and totally disabled.

A verdict will not be disturbed upon appeal because of excessive damages, unless it is apparent from the record and the amount awarded that the jury acted from prejudice, passion, partiality, or corruption. The record in the instant case fails to disclose that the jury, in determining the amount of damages awarded the appellee, was influenced by any of the improper elements above indicated, and that it did not exercise a sound discretion. The following authorities sustain this conclusion. *Terre Haute, etc., Co.* v. *Sheeks* (1900), 155 Ind. 74, 58 N. E. 434; *City of Michigan City* v. *Phillips* (1904), 163 Ind. 449, 71 N. E. 205; *Vandalia Coal Co.* v. *Yemm* (1900), 175 Ind. 524, 94 N. E. 881; *Public Utilities Co.* v. *Handoof* (1916), 185 Ind. 254, 112 N. E. 775; *Citizens, etc., Co.* v. *Prickett* (1919), 189 Ind. 141, 125 N. E. 193; *Chicago, etc., Co.* v. *Roth* (1915), 59 Ind. App. 161, 108 N. E. 971; *Kanuch et al.* v. *Prentiss* (1928), 89 Ind. App. 358, 164 N. E. 708; *Kenwood, etc., Co.* v. *Speckman* (1930), 92 Ind. App. 419, 176 N. E. 29; *Coca Cola, etc., Co.* v. *Wheeler* (1934), 99 Ind. App. 502, 193 N. E. 385; *Clevenger* v. *Kern* (1935), 100 Ind. App.

581, 197 N. E. 731; 1 Parnule Damage Verdicts, sec. 114, p. 1107.

Appellants complain of the action of the court in giving certain instructions, and refusing to give one instruction tendered by them. To prolong this opinion for the purpose of discussing each of these instructions in detail would not be justified. The instructions given, which the appellant criticizes, were proper expositions of the law as applied to the issues being tried and the evidence submitted in support thereof. As we interpret instruction numbered 20 tendered by the appellants, which the court refused to give, they sought to have the court instruct the jury, in effect, that the appellants were relieved from the exercise of care, in a lesser degree than reasonable care, under the circumstances existing at the time of the collision, while there was imposed upon the appellee the exercise of a higher degree of care than reasonable care, under the circumstances existing at the time of the collision. It was not error to refuse the giving of this instruction. An examination of all of the instructions given to the jury discloses that, considered in their entirety, they contained correct statements of the principles of law for its guidance in deliberating on a verdict in the instant case, and that men of ordinary intelligence and understanding would not be misled by them. *Mishler* v. *Chicago, etc., Co.* (1919), 188 Ind. 189, 122 N. E. 657.

It is apparent from the record that the merits of this cause were fairly tried and determined in the lower court.

Judgment affirmed.