ROBERT F. WALLACE, SPECIAL ADMINISTRATOR OF THE ESTATE OF RALPH N. BACK, DECEASED *v*. FAYE DOAN.

[No. 1-972A62. Filed February 26, 1973.]

*Rosenfeld, Wolfe & Frey, Eric A. Frey,* of Terre Haute, for appellant.

*Berry, Miller and Wright,* of Terre Haute, for appellee.

LOWDERMILK, J.—Ralph N. Back, hereinafter known as "Back," and Faye Doan, hereinafter known as "Doan," were

involved in a two car collision in Terre Haute, Indiana, on November 6, 1970. Back died on November 26, 1970, of natural causes totally unrelated to the collision.

On January 11, 1971, Doan's attorneys filed a petition to appoint a special administrator of Back's estate in the Probate Division of the Vigo Circuit Court for the sole purpose of bringing an action against Back's personal representative. The court approved the petition and appointed Robert F. Wallace special administrator for the sole and only purpose of being made a party defendant in a civil action for personal injuries. The court's judgment entry went further and stated the following: ". . . and that such recovery therein shall be limited to the extent of the liability insurance available under a certain automobile insurance policy covering the automobile driven by Ralph N. Back, deceased, at the time of his death, and, in no event shall the assets of the estate, if any, be subject to any recovery against the estate in excess of the insurance benefits available."

The Clerk was authorized to issue Letters of Administration to Robert F. Wallace, hereinafter referred to as "Wallace," on Back's estate upon his presenting bond in the amount of $1,000.

On the same date Doan filed her complaint for damages in one Paragraph, and to which Wallace filed answer in two Paragraphs, the second of which was in the affirmative, alleging contributory negligence which proximately contributed to her own injuries and damages on the part of Doan.

The facts are that Doan was driving west on Walnut Street, which is a two lane, one way paved street in Terre Haute, Indiana, and intersects 12th Street at right angles. There is a regulation stop sign at the northwest corner of said intersection which gives the traffic on Walnut Street preference over that on 12th.

Doan was driving a Ford automobile at about 20 miles per hour and testified she was looking straight ahead. On cross

examination she said she did not look to her right nor her left as she approached and drove into the intersection and she did not see Back's automobile and did not know it was around until she was more than half way through the intersection and was struck on the right rear corner of her Ford by the front end of Back's Studebaker which was being driven south.

There is evidence that no cars were permitted to park on the north side of Walnut Street and there was nothing to obstruct Doan's view on her right as she approached 12th Street.

The impact was of sufficient force that Doan's Ford turned completely around facing back east and was against the north curb of Walnut Street, 15 feet west of 12th Street. Back's car stopped facing southwest in the southwest quadrant of the intersection.

William Beleslin, a Terre Haute policeman, investigated the accident and testified he talked with Doan and she told him the same facts that she related on the witness stand. He also testified he talked with Back and that Back said he stopped at the intersection but did not see the Doan automobile and he was going 15 miles per hour when he struck Doan's car. Mr. Back was 83 years of age.

The impact damaged the Doan car to the extent it was a total loss.

Officer Beleslin helped Doan out of the car and she thought she was uninjured; however, later in the day she had numbness of the left arm, pain in the neck and lower back. She was placed in traction, suffered muscle spasms of the neck and back and took physical therapy treatments. Dr. Burkle, an ortheopedic surgeon, testified she had permanent injury, although there was a congenital defect of the spine which was aggravated by the impact and which was unknown to her before that time.

Doan worked in a nursing home and lifted bed patients and

was rendered unable to do such work. She had a life expectancy of 45.92 years, a weekly income of $58.00 and missed 47 weeks of work.

The case was tried to a jury and at the close of Doan's evidence Wallace filed a motion for directed verdict which was overruled. Wallace introduced evidence, at the conclusion of which the court gave to the jury, over written objection by the appellant, court's Instruction No. 9, which instruction reads as follows:

### "COURT'S INSTRUCTION NO. 9

I instruct you that the issue of whether or not plaintiff was guilty of contributory negligence has been withdrawn by the Court and is not an issue in this case."

The case was concluded and the jury returned its verdict in favor of Doan in the amount of $58,000 on which the court duly entered judgment for Doan. Wallace timely filed a motion to correct errors, which was by the court overruled and which is followed by this appeal.

The motion to correct errors raised the following issues, none of which were waived in oral argument.

Wallace claims denial of a fair trial for the following errors and reasons, to-wit:

The first issue raised by appellant through the motion to correct errors was that the trial court committed reversible error in refusing to instruct the jury on the issue of contributory negligence and in specifically withdrawing the issue of contributory negligence by Doan from the jury.

Wallace tendered four instructions predicated on Doan's alleged contributory negligence, which the court refused to give, to which refusal Wallace timely filed written objection.

Wallace's objection to the court's Instruction No. 9 is that evidence had been introduced on the matter of contributory negligence and upon which there was an issue of fact for the jury to decide. He further contends that plaintiff testified

she did not look to the right or left as she was driving west on Walnut Street prior to reaching the intersection where the collision occurred; that there were no obstructions to her line of vision looking to the right, or north, toward where defendant's vehicle would have stopped; there is no evidence to indicate how long defendant's vehicle was stopped at the stop sign involved and inasmuch as the plaintiff never looked for or saw defendant's vehicle there is evidence that plaintiff failed to keep a proper look out for other vehicles using the highway. The objection further claims the foregoing facts raised an inference that plaintiff failed to keep a proper look out, abused the preference given her by the fact that she was on a through highway and the foregoing testimony demonstrated that plaintiff may have proceeded on a through highway with complete disregard for the safety of others and therefore would have been guilty of negligence. Wallace cited the case of *Standard Oil of Indiana* v. *Thomas* (1938), 105 Ind. App. 610, 13 N.E.2d 336, and *Pfisterer* v. *Key* (1941), 218 Ind. 521, 33 N.E.2d 330, as authority for his position. The objection was further that court's Instruction No. 9 deprived the defendant from relying upon an issue which had been in litigation in the action, as evidenced by the record, and upon which there was evidence to support the application of the doctrine of contributory negligence.

Wallace further objected to said Instruction No. 9 for the reason that plaintiff failed to object to any evidence relating to the issue of contributory negligence and therefore waived the right to have the issue of contributory negligence withdrawn from the jury's consideration. The last part of the objection to court's Instruction No. 9 was that the giving of the same tended to direct the finding in favor of plaintiff and against the defendant and leads the jury to believe that they must return a verdict for the plaintiff.

In *Standard Oil of Indiana* v. *Thomas, supra,* there was evidence in the record that as the plaintiff-appellee approached the preferential highway at 8 or 10 miles per hour, he looked

east when about 100 feet therefrom and saw no vehicles and looked west when about 60 feet north of the preferential highway and did not see anything coming; that when he was about forty feet from the state road he came almost to a stop. He proceeded in low gear, did not know the speed he was driving, was looking for traffic, was partly across the pavement when he looked to the right the second time and saw the defendant-appellant's truck about to strike his automobile. At this time plaintiff-appellee's automobile's front wheels were south of and off the pavement; the appellant truck driver saw appellee approaching the intersection when the appellant truck driver was 400 or 500 feet west of the intersection and did not slow the speed of his truck because he thought he did not have to stop. The truck driver was travelling from 45 to 50 miles per hour. This court said:

". . . Upon these facts, it is manifest that the jury was well within its province in determining that appellee's injuries were caused by appellants' negligence and that appellee was not guilty of negligence which contributed thereto."

*Standard Oil*, *supra*, further quotes the case of *Central*, *etc.*, *Co.* v. *Wishard* (1916), 186 Ind. 262, 114 N.E. 970, wherein the court said:

"While, as contended by appellants, the failure of appellee to bring his automobile to a full stop as provided by § 47-549 Burns (§ 11182 Baldwin's) *supra*, before entering upon the intersection, may have been negligence *per se*, this fact of itself would not preclude the appellee from recovery, unless it further appeared from the facts and circumstances disclosed by the evidence that such negligence was a contributing cause of his injuries. . . ."

Ind. Ann. Stat. § 47-2028 (Burns, 1965 Repl.) reads, in part, as follows:

"Entering through highway or intersection—Obedience to yield signs.— (a) The driver of a vehicle shall stop as required by this act at the entrance to a through highway and shall yield the right-of-way to other vehicles which have entered the intersection from said through highway

or which are approaching so closely on said through highway as to constitute an immediate hazard, but said driver having so yielded may proceed and the drivers of all other vehicles approaching the intersection on said through highway shall yield the right-of-way to the vehicle so proceeding into or across the through highway.

"(b)   The driver of a vehicle shall likewise stop in obedience to a stop sign as required herein at an intersection where a stop sign is erected at one [1] or more entrances thereto although not a part of a through highway and shall proceed cautiously, yielding to vehicles not so obliged to stop if necessary at the entrance to a through highway so closely as to constitute an immediate hazard, but may then proceed."

The case at bar is distinguishable from *Standard Oil, supra,* in that Wallace's decedent, Back, approached and drove onto the preferred street, striking Doan's automobile on the right rear end with such force and violence that it turned the same around 180 degrees. Doan was practically through the intersection when her car was struck. In the *Standard Oil* case, Thomas, the plaintiff, did not stop at a stop sign but proceeded across the preferred highway with his front wheels being completely across the highway and was seen by the truck driver some 400 to 500 feet before the truck struck the automobile. The truck driver erroneously assumed that he had the right of way under all circumstances and did not slow his speed and struck Thomas' car and inflicted injuries to his person.

*Pfisterer* v. *Key, supra,* is distinguishable in its facts from the case at bar and we shall not discuss the same.

It is appellant's position that Doan was under a duty to keep a look out for vehicles which might emerge from a non-preferential street and that this duty was violated when Doan looked straight ahead and failed to look to either side before entering the intersection. Appellant contends that this raises at least an inference of contributory negligence and that this issue should have been left for the jury to decide.

The evidence is that Doan was driving 20 miles per hour, and was looking straight ahead as she approached, entered

and was driving through the intersection. The evidence showed she had her car under control and was on the right side of the street. The law does not require a person lawfully operating a motor vehicle on a preferred street or highway to turn her head and look to the right and to the left before entering and traversing any non-preferred street intersecting the preferred highway. The only requirement of Doan was that she use due care at the time and place in question and act as a reasonable and prudent person would act under the same or like circumstances. She had a right to assume while so driving that any person about to enter or traverse the preferred Walnut Street would obey the law. I. L. E., Automobiles, Vol. 3, p. 437, § 83, states:

> "In the absence of contrary indications, a motorist who has the right-of-way at an intersection may assume that vehicles approaching on different streets will yield the right of way, that such other vehicles will not suddenly violate a statute or rule of the road and that approaching vehicles are not traveling at an illegal speed and will not make an unexpected, unsignaled turn."

Under these facts and circumstances it is our opinion that reasonable men could come to no conclusion other than that Doan was not guilty of any negligence in the operation of her automobile which could in any way have proximately contributed to her injuries and, therefore, Doan was not guilty of contributory negligence as a matter of law and the court properly gave the instruction withdrawing the matter of contributory negligence from the jury.

Our position is sustained in the case of *Stallings* v. *Dick* (1965), 139 Ind. App. 118, 210 N.E.2d 82, where the court said:

> "The prevailing Indiana rule is that contributory negligence is generally a question of fact for the jury to determine whether the facts are such as to be subject to more than one reasonable inference. However, where the facts are undisputed and only a single inference can reasonably be drawn therefrom, the question of contributory negligence becomes one of law." See, also,

*Connor* v. *Jones* (1945), 115 Ind. App. 660, 59 N.E.2d 577;
*Lawson* v. *Webster* (1962), 133 Ind. App. 296, 181 N.E.2d
870.

The law in Indiana is that it is reversible error for the
court to refuse to withdraw the question of contributory negli-
gence where there is no evidence or inference that
there is contributory negligence. *Northern Indiana
Transit Co.* v. *Burk* (1950), 228 Ind. 162, 89 N.E.
2d 905.

We are of the opinion that there is no merit in the last
two paragraphs of Wallace's objection to court's Instruction
No. 9.

Having determined that the court properly gave Instruc-
tion No. 9 withdrawing the issue of contributory negligence, it
necessarily follows that the court properly refused to give
defendant's tendered Instructions 4, 6, 9, and 10 on contribu-
tory negligence.

Appellant next contends that the trial court erroneously
instructed the jury that it could find against Back for allegedly
failing to stop for the stop sign and failing to keep a proper
look out. The facts show that upon impact Doan's car spun 180
degrees and stopped only 15 feet west from where it was hit
and that Back was driving a Studebaker. From this, reason-
able men could infer that the Back automobile could not have
come to a stop and then achieved sufficient speed to cause
such reaction to the Doan car. Back claimed he was stopped
before entering Walnut Street and was driving 15 miles
per hour when he struck Doan's car, according to his statement
to the officer immediately after the collision.

There being evidence from which a reasonable inference
could be drawn that Back failed to stop, it was proper to
instruct the jury on this facet of the case and it was
not error to give said instruction. *Robertson Bros.
Dept. Store* v. *Stanley* (1950), 228 Ind. 372, 90
N.E.2d 809; *Connor* v. *Jones, supra.*

Appellant Wallace next complains of the giving of court's Instruction No. 16, which states the statute defining a through highway requires drivers to stop at the entrance to the same. We have hereinabove held that there was an inference from which the jury could find that Back did not stop and therefore giving the instruction was proper.

Wallace next objects to the court's refusal to grant his motion for a directed verdict at the close of Doan's case in chief and renewed at the close of all the evidence.

The rule is that if there is any evidence from which a reasonable inference can be drawn that tends to support one or more of the allegations of negligence charged in plaintiff's complaint, there is a question of fact for the jury and the court cannot correctly grant a directed verdict, either at the close of plaintiff's evidence or at the close of all the evidence. *Mamula* v. *Ford Motor Co.* (1971), 150 Ind. App. 179, 275 N.E.2d 849.

We have heretofore set out in this opinion the facts from which inferences could reasonably be drawn that Back was negligent and therefore now hold that the court correctly overruled both motions for directed verdict. This rule is so well settled in Indiana it needs no citation of authority.

Appellant next contends that the trial court erred when it refused Wallace's tendered Instruction No. 7, which would have informed the jury that they could not assess damages for attorney fees, trial preparation or court costs. The court correctly refused to give said instruction for the reason that there was no evidence in the record pertaining to attorneys' fees or court costs or attorneys' expense for trial preparation. It is improper to instruct a jury on matters which are not an issue in the cause. *B & O Railroad Co.* v. *Brown* (1972), 154 Ind. App. 660, 290 N.E.2d 742, 34 Ind. Dec. 416.

Appellant's next specification of error is that the verdict of the jury, in the sum of $58,000, was excessive for two

reasons. The first is that the order of the Probate Court opening Back's estate upon Doan's petition specifically limited the amount of recovery to the available insurance proceeds.

The second reason is that the jury's verdict was excessive when considered in light of the evidence.

The transcript discloses, at Exhibit C, that Back had an automobile insurance policy issued by the Hartford Accident Indemnity Company with limits of liability for each person for bodily injury in the amount of $10,000.

In our opinion the parties hereto are bound by the order of the Probate Division of the Vigo Circuit Court which ordered Letters of Administration to Wallace on the Back estate, limiting the amount of recovery to the amount of the policy of insurance on the Back Studebaker automobile, which was $10,000 per person.

In our opinion, appellee's argument that appellee would have accepted $9,000 and was only offered $3,500 and therefore Hartford was guilty of negligence in not settling the claim in litigation, thereby making the insurance company responsible to Doan for the amount of the recovery awarded by the jury above the policy limit is untenable.

We have recently held, in the case of *Bennett* v. *Slater* (1972), 153 Ind. App. 67, 289 N.E.2d 144, that the insurance policy was a contract between the insurer and the insured. The excess liability arises out of this contract and the claimant is a stranger to that relationship and has no standing to sue the insurer under the policy.

The law in Indiana has been determined that a jury's verdict must be so large and out of proportion to the damages sustained by the plaintiff that it is shocking to the senses before a new trial will be granted for excessive damages. Inasmuch as we have heretofore held that the maximum recovery in this case can be $10,000 and in view of the permanency of Doan's injuries, expenses, loss of wages,

past and future, we are of the opinion that an award of $10,000 is not excessive.

This court now orders the trial court to enter its order of remittitur of $48,000 and enter its judgment as of the date of the entry of the original judgment in the sum of $10,000 and the same to draw interest at the rate of 6% per annum from the date of the original judgment.

On the condition that the trial court enters its remittitur and amends its judgment as heretofore ordered, the judgment is affirmed.

Robertson, P.J. and Lybrook, J., concur.