Jennifer **WILKERSON**, Appellant–Plaintiff,

v.

Sarah Willis **HARVEY** f/k/a Sarah Willis, Appellee–Defendant.

No. 29A04–0401–CV–49.

Court of Appeals of Indiana.

Sept. 10, 2004.

---

Timothy C. Caress, Marie Troendle Greer, Cline Farrell Christie Lee & Caress, P.C., Indianapolis, IN, Attorneys for Appellant.

W. Brent Threlkeld, Scott M. Dillon, Threlkeld Reynolds, LLP, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MAY, Judge.

The trial court granted Sarah Harvey's request for summary judgment in a negligence suit brought against her by Jennifer Wilkerson for damages Wilkerson suffered in an auto collision with Harvey. Wilkerson raises numerous issues on appeal, which we consolidate and restate as:

1. Whether Harvey's alleged failure to drive at an appropriately reduced speed as she approached an intersection raises a genuine issue of material fact about whether Harvey breached a duty to Wilkerson;

2. Whether Harvey's alleged failure to operate her motor vehicle at an appropriately reduced speed as she approached a special hazard raises a genuine issue. of material fact as to whether she breached a duty to Wilkerson; and

3. Whether Harvey's alleged breach of general duties with respect to the operation of her motor vehicle raises a genuine issue of material fact about whether she breached a duty to Wilkerson.

We reverse.

## FACTS AND PROCEDURAL HISTORY

U.S. 52 is a four-lane divided highway with two northbound and two southbound lanes. The speed limit is 55 miles per hour. U.S. 52 intersects State Route 28 ("S.R.28"), which runs east from U.S. 52.

The two highways intersect at a perpendicular angle. U.S. 52 is the preferential highway, and vehicles on U.S. 52 are not subject to any traffic control device at the intersection. Vehicles traveling southbound on U.S. 52 may legally turn left across the northbound lanes of U.S. 52 and onto S.R. 28 by first entering the paved median separating northbound and southbound U.S. 52. Such turning vehicles have a yield sign and must yield to northbound traffic on U.S. 52.

At approximately noon on December 25, 2000, Harvey was traveling northbound along U.S. 52 at 55 miles per hour in her 1999 Ford Contour. Jennifer and Richard Wilkerson were traveling south on U.S. 52 in a Chevrolet S–10 truck. As Harvey approached the intersection of U.S. 52 and S.R. 28, Richard Wilkerson entered the U.S. 52 southbound median, failed to obey the posted yield sign, and turned directly into the path of Harvey's vehicle. Harvey did not see the Wilkerson vehicle prior to the instant before impact. The collision left Jennifer Wilkerson a quadriplegic.

The Wilkersons sued Harvey for negligence. Harvey filed a motion for summary judgment. The trial court concluded as follows: [1]

> In the case at bar it is undisputed, and in fact, confirmed by the testimony of the disinterested witness, that [Wilkerson's] vehicle, while subject to a yield sign, turned into the path of [Harvey's] vehicle wherein she had the right-of-way and was driving at an appropriate speed. The Court concludes that under such circumstances [Harvey] did not have a duty to anticipate that [Wilkerson] would pull out in front of her vehicle. Notwithstanding [Wilkerson's] argument that it was "possible" (pursuant to the Deposition of [Harvey]) that she was traveling at a rate of speed somewhere between 55 and 60 miles per hour, the Court finds such assertions to be speculative and insufficient to overcome summary judgment.
>
> The Court, after consideration of the record, concludes that there is no evidence, beyond speculation, that [Harvey] breached the duties discussed hereinabove, including each of the "general duties" cited by [Wilkerson].
>
> The court further concludes that expert evidence cited by [Wilkerson] in her Supplemental Brief is also speculative in nature. There are no facts which could give rise to any inference that [Harvey's] driving was the proximate cause of the collision.

(Appellant's App. at 140–141.)

## DISCUSSION AND DECISION

■ To sustain an action for negligence, a plaintiff must establish: 1.) a duty owed by the defendant to conform her conduct to a standard of care arising from her relationship with the plaintiff; 2.) a breach of that duty; and 3.) an injury proximately

---

1. Wilkerson did not include in her Appellant's Brief a copy of the trial court's written opinion on summary judgment, as required by Ind. Appellate Rule 46(A)(10).

caused by the breach of that duty. *Webb v. Jarvis*, 575 N.E.2d 992, 995 (Ind.1991).

Our standard of review for a trial court's grant of summary judgment is well settled. Summary judgment is appropriate only where the designated evidence shows there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Corr v. Am. Family Ins.*, 767 N.E.2d 535, 537 (Ind. 2002). The moving party must designate sufficient evidence to eliminate any genuine factual issues, and once the moving party has done so, the burden shifts to the nonmoving party to come forth with contrary evidence. *Shambaugh & Son, Inc. v. Carlisle*, 763 N.E.2d 459, 461 (Ind.2002). The court must accept as true those facts alleged by the nonmoving party, construe the evidence in favor of the nonmoving party, and resolve all doubts against the moving party. *Id.*

Summary judgment is rarely appropriate in negligence cases. *Tibbs v. Huber, Hunt, & Nichols, Inc.*, 668 N.E.2d 248, 249 (Ind.1996). Issues concerning negligence, causation and reasonable care are more appropriately determined by the trier of fact. *Ousley v. Bd. of Comm'rs of Fulton County*, 734 N.E.2d 290, 293 (Ind. Ct.App.2000), *trans. denied* 753 N.E.2d 5 (Ind.2001). Any doubt as to the existence of a genuine issue is to be resolved against the proponent of the motion and, accordingly, in favor of the non-movant. *Id.*

### 1. *Approaching an Intersection*

Our supreme court has held that proof of a violation of a safety regulation creates a rebuttable presumption of negligence. *Witham v. Norfolk & W. Ry. Co.*, 561 N.E.2d 484, 485 (Ind.1990), *reh'g denied.* Ind.Code § 9–21–5–4 states:

> The driver of each vehicle shall, consistent with section 1[2] of this chapter, drive at an appropriate reduced speed as follows:
>
> 1) When approaching and crossing an intersection or railway grade crossing.
>
> 2) When approaching or going around a curve.
>
> 3) When approaching a hill crest.
>
> 4) When traveling upon a narrow or winding roadway.
>
> 5) When special hazard exists with respect to pedestrians or other traffic by reason of weather or highway conditions.

(footnote added).

Wilkerson contends Harvey's failure to reduce her speed as she approached the intersection with S.R. 28 violated Ind.Code § 9–21–5–4(1) and created a rebuttable presumption of negligence. Wilkerson argues the trial court erred in focusing on whether Harvey was speeding at the time of the collision, rather than examining whether she drove at an "appropriate reduced speed."

Wilkerson relies on her witness Gary Barnett, an expert in the field of motor vehicle accident reconstruction, to conclude this accident would have been avoided had Harvey been driving at an "appropriate reduced speed." Barnett made the following conclusions:

> A. If the approaching 1999 Ford had reduced its speed as the vehicle ap-

**2.** Ind.Code § 9–21–5–1:

> A person may not drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions, having regard to the actual and potential hazards then existing. Speed shall be re-

> stricted as necessary to avoid colliding with a person, vehicle, or other conveyance on, near, or entering a highway in compliance with legal requirements and with the duty of all persons to use due care.

proached the intersection, as required by Indiana law, starting at three hundred feet before the intersection, this vehicle, just by taking their foot off the gas pedal, would have slowed down to approximately 41 MPH and taken 4.25 seconds to do so. This is utilizing a norm of .15 f. deceleration factor.

B. Since, according to a witness, the Chevy vehicle was already moving at the edge of the road as it entered the intersection, starting approximately at 4.0 MPH. this vehicle would take 2.28 to 2.05 seconds to cross the median lane of travel.

C. Utilizing the longest time period for the Chevy to cross the median lane of travel from a dead stop at the edge of the road, 2.28 seconds, the approaching Ford, utilizing the driver's statement of 55 MPH, could have been as close as approximately 170 feet prior to the intersection, taking their foot off the gas, and this crash would not have occurred.

D. A vehicle traveling 55 MPH would be moving at 80.6 feet per second.

(Appellant's App. at 21.)

Harvey points to several Indiana decisions in favor of drivers on a preferred road who are involved in collisions at an intersection as a result of the other party's negligence. In *Berg v. Glinos,* 538 N.E.2d 979 (Ind.Ct.App.1989), the plaintiff's vehicle stopped at a stop sign. The defendant saw the plaintiff's vehicle sitting at the sign for an unreasonably long time. The defendant slowed his vehicle by taking his foot off the accelerator and coasting toward the intersection. The plaintiff suddenly pulled in front of the defendant's vehicle causing a collision. The court decided in favor of defendant holding that unless the party has notice to the contrary, he has the right to assume others who owe him a duty of reasonable care will exercise such care. *Id.* at 981.

The exercise of ordinary and reasonable care does not require the preferred driver to be constantly aware of actions of non-preferred drivers in plain view. *Id.* at 982. A motorist is not required to anticipate extraordinary hazards nor to constantly expect or search for unusual dangers. *Id.* The motorist on the preferred road is under no duty to anticipate that the motorist on the non-preferred road, who is stopped at a stop sign, will pull out in front of his vehicle. *Id.*

In *Anderson v. Pre–Fab Transit Co., Inc.,* 409 N.E.2d 1157 (Ind.Ct.App.1980), the defendant failed to stop at a red light and collided with the plaintiff. We held that if the plaintiff was not on notice the other motorist would violate the law, he had no duty to look both directions on the non-preferred road to see if any approaching drivers were going to violate the law. *Id.* at 1163. We noted further that the preferred driver has the right to assume the non-preferred driver will obey the traffic laws, and is not required to proceed overly cautiously into an intersection and to be cognizant of everything in plain view. *Id* at 1164. Finally, we noted that if we were to require the preferred driver to check the oncoming traffic on the non-preferred street we would probably cause more accidents than we would prevent. *Id.*

In *Wallace v. Doan,* 155 Ind.App. 316, 292 N.E.2d 820 (1973), the plaintiff entered the intersection from the preferred street at approximately twenty miles per hour. Her vehicle was struck by the defendant's car after he had failed to obey the stop sign. The plaintiff testified she did not look to the left or the right as she approached and entered the intersection. In upholding the trial court's withdrawal of the issue of contributory negligence from the jury, we said:

[t]he law does not require a person lawfully operating a motor vehicle on a preferred street or highway to turn her head and look to the right and to the left before entering and traversing any non-preferred street intersecting the preferred highway. The only requirement of [the plaintiff] was that she use, due care at the time and place in question and act as a reasonable and prudent person would act under the same or like circumstances. She had a right to assume while so driving that any person about to enter or traverse the preferred Walnut Street would obey the law.

*Id.* at 324, 292 N.E.2d at 825. We held that motorists at an intersection who had the right of way could assume vehicles approaching on different streets will yield the right of way, and other vehicles would not suddenly violate a statute or rule of the road and make an unexpected turn. *Id.*

■ *Berg, Anderson and Wallace* all lead to the conclusion Harvey was not required to anticipate a driver on a non-preferred road would break the law. However, we must address whether 55 MPH was an "appropriate reduced speed" in accordance with Ind.Code § 9–21–5–4(1). There is no evidence Harvey was exceeding the posted speed limit of 55 MPH; however, the statute does not merely place a duty to drive at the speed limit when approaching an intersection. It explicitly calls for an "appropriate reduced speed."

We require more than speculation to overcome summary judgment. *Ramon v. Glenroy Const. Co., Inc.,* 609 N.E.2d 1123, 1132 (Ind.Ct.App.1993). The trial court determined information about Harvey's speed was speculative in nature and insufficient to overcome summary judgment. We disagree. The trial court relied on Harvey's admission that it was "possible"

she exceeded 55 MPH at the intersection to rule that evidence of her speed was "speculative." However, the record includes testimony Harvey was traveling at 55 MPH prior to the accident and did not reduce her speed as she approached the intersection.

Q: So nothing about this particular intersection gave you reason as you approached it before you ever saw the other vehicle.

A: Uh-huh.

Q: -to slow.

A: Well, there was snow in the median, yes.

Q: Did that cause you to slow before this accident occurred?

A: No.

(Appellant's App. at 62–63.)

Ind.Code § 9–21–5–4 requires drivers approaching an intersection to drive at an "appropriate reduced speed" when approaching an intersection. The appropriateness of Harvey's speed is a question of fact that precludes summary judgment.

### 2. *Approaching a Special Hazard*

■ Wilkerson also claims a four-foot high snow bank in the median of U.S. 52, which obstructed both Harvey's and Wilkerson's view of oncoming traffic, was a special weather hazard as described in Ind. Code § 9–21–5–4(5) and also required Harvey to drive at an "appropriate reduced speed."

In *Osterloo v. Wallar,* 758 N.E.2d 59 (Ind.Ct.App.2001), *trans. denied* 774 N.E.2d 510 (Ind.2002), a sledding child slid into the street and was struck by a passing motorist. Six to eight inches of snow had fallen that day and the roads were hazardous and slippery. *Id.* at 60. The motorist appealed the trial court's denial of his motion for summary judgment. We ruled that the appropriateness of the motorist's

speed, given the weather and road conditions, was a genuine issue of material fact. *Id.* at 63. Accordingly, summary judgment was properly denied. *See also St. John Town Bd. v. Lambert,* 725 N.E.2d 507, 517 (Ind.Ct.App.2000).

Harvey argues the four-foot high snow bank was not a "special weather hazard." Decisions dealing with weather hazards generally involve weather affecting the driver's view of the street before him or her, or weather directly affecting the condition of the street. *See Parker v. Heresz,* 295 F.2d 731 (7th Cir.1961) (icy and slippery pavement); *Jackson v. Stellingwerf,* 138 Ind.App. 65, 210 N.E.2d 49 (1965) (wet pavement); *Wynn v. Ashby,* 128 Ind.App. 208, 146 N.E.2d 561 (1957) (dark and rainy weather conditions); *Conner v. Jones,* 115 Ind.App. 660, 59 N.E.2d 577 (1945) (dark conditions with drizzling rain); *Acton v. Lowery,* 109 Ind.App. 581, 34 N.E.2d 972 (1941) (icy street); and *Jay v. Holman,* 106 Ind.App. 413, 20 N.E.2d 656 (1939) (icy street). Accordingly, Harvey requests we hold a snow bank that does not interfere with a driver's view of the road in front of her, or does not alter the physical surface of the path in front of her on an otherwise clear and dry day, is not a "special weather hazard" under Ind.Code § 9–21–5–4(5).

█ We agree with Harvey's general proposition that a snow bank in the median of a divided highway that does not interfere with a driver's view of the road or the physical surface of the road is not a "special weather hazard." However, she fails to acknowledge the snow bank did, in fact, interfere with her view of southbound traffic approaching her on U.S. 52. Harvey testified:

Q: Was there anything obstructing your full view of the intersection?

A: Yeah. You know, I remember that you couldn't see the southbound lane,

the southbound lanes of traffic because of the snow

Q: And that was a condition that you observed all along 52 there in the median while you are on 52?

A: Yeah as far as I know.

(Appellant's App. at 65.) As the snow bank obstructed Harvey's view of the intersection, we are unable to say as a matter of law that the snow bank did not obstruct her view of her path. It is true that a motorist on a highway regularly used by the public is not required to anticipate extraordinary hazards nor to constantly expect and search for unusual dangers. *Smith v. Beaty,* 639 N.E.2d 1029, 1033 (Ind.Ct.App.1994). However, whether or to what extent Harvey needed to reduce her speed approaching the intersection in light of that weather-created condition is a question of fact that precludes summary judgment.

### 3. General Duty

█ All operators of motor vehicles have a general duty to use ordinary care to avoid injuries to other motorists. *Allied Fidelity Ins. Co. v. Lamb,* 361 N.E.2d 174, 180 (Ind.Ct.App.1977). Further, a motorist is charged with the duty of exercising ordinary care to observe dangers and obstructions and is chargeable with notice of obstructions that a person of ordinary prudence would reasonably be expected to observe. *Smith,* 639 N.E.2d at 1033.

In *Smith,* Smith was driving a service van when one of the tires on the right side of his van blew out. As the tire burst the van rolled over twice. It came to a rest upside down in the eastbound lane of traffic with the nose of the van pointed in a northeasterly direction. Subsequently, Wells approached in her vehicle and stopped at the accident scene. Smith asked Wells for help and told her he could not get out of the van. Wells moved her

vehicle behind Smith's van and parked it facing west in the middle of the road. As Wells stepped out of her truck to help Smith, a semi-tractor trailer driven by Beaty approached from the west. Beaty attempted to avoid Smith's van by swerving into the other lane, but collided with the van.

The trial court granted Beaty's motion for judgment on the evidence. Beaty argued that Smith failed to produce sufficient evidence he breached the requisite standard of care because Smith introduced no evidence Beaty failed to maintain a proper lookout or did not use due care to avoid a collision. Smith asserted he presented sufficient evidence to allow reasonable fact finders to differ as to whether the care exercised by the defendants with respect to speed and the visibility of the objects on the road was reasonable.

■■■ We noted a motorist is not required to anticipate extraordinary hazards nor to constantly expect and search for unusual dangers. *Id.* at 1033. However, a motorist is obliged to exercise ordinary care to observe dangers and obstructions and is chargeable with notice of obstructions that a person of ordinary prudence would normally be expected to observe. *Id.* "Keeping a proper lookout" describes the duty to see that which is clearly visible or that which in the exercise of due care would be visible. *Id.* Generally, whether under the facts of a case a driver complied with the standard of ordinary care to keep a lookout for objects in the road is a question for the jury. *Id.* Based on the evidence we could not say that there was a complete failure of proof on any element of

Smith's negligence claim and we reversed the trial court's judgment.

As we noted earlier, Harvey admitted a pile of snow obstructed her view:

Q: Was there anything obstructing your full view of the intersection?

A: Yeah. You know, I remember that you couldn't see the southbound lane, the southbound lanes of traffic because of the snow

Q: And that was a condition that you observed all along 52 there in the median while you are on 52?

A: Yeah as far as I know.

(Appellant's App. at 65.) There is a genuine issue of material fact about whether Harvey exercised reasonable care given her admission there was an obstruction blocking her view of oncoming traffic and the intersection.

Genuine issues of material fact exist regarding whether Harvey drove at an "appropriate reduced speed" as required by Ind.Code § 9–21–5–4 when approaching an intersection and when approaching a special hazard. In addition, a genuine issue of material fact exists regarding whether Harvey breached her general duty to exercise ordinary care under the circumstances. Summary judgment for Harvey was therefore inappropriate.[3]

Reversed.

VAIDIK, J., concurs.

SULLIVAN, J., dissents.

whether Harvey breached one of the three duties to Wilkerson discussed herein based on her speed and the circumstances surrounding the accident. If Harvey breached a duty by failing to slow to an "appropriate" speed, she also may have been a proximate cause of the accident. Proximate cause is another factual question the jury must answer.

---

3. The trial court also noted the evidence Harvey was the proximate cause of the accident was speculative and that no facts in the record lead to an inference she was the proximate cause. We disagree. The evidence from Wilkerson's expert suggests Harvey's failure to slow down may have been a cause of the accident. A jury must determine