WILLETTA KRUSS *v*. SINK & EDWARDS, INC. ET AL.

[No. 369A57. Filed December 9, 1970. No petition for rehearing filed.]

*Richard W. Yarling, Yarling, Winter, Tunnell & Lamb,* of counsel, of Indianapolis, for appellant.

*Glen E. Davis, Kitley, Schreckengast & Davis,* of Beech Grove, for appellees.

WHITE, J.—This is an appeal from a verdict and judgment for the defendants in an action for personal injuries arising out of a collision, during mid-afternoon of June 5, 1965, between an automobile driven by Willetta Kruss, plaintiff-appellant, and a truck owned by defendant-appellee Sink & Edwards, Inc., and driven, in the course of his employment, by its employee, defendant-appellee Craig A. Hawks, age 20. Riding with defendant-driver was a fellow male employee, age 52. Both vehicles were travelling east-bound, in the same traffic lane, on East 38th Street, a multi-lane street in the city of Indianapolis. Plaintiff, age 49, was alone in her 1958 Buick Electra automobile. She was immediately ahead of defendant's G.M.C. two-ton pick-up truck as they approached the Fall Creek Boulevard intersection. There was an interval of about two and one-half car lengths between the vehicles, both of which were travelling at a speed of approximately twenty-five

to thirty miles per hour. The defendant-driver turned his head to the left to check traffic in the lane to his left, preparatory to changing to that lane. When he looked forward again plaintiff's automobile had begun to stop because traffic ahead was stopping. Defendant-driver veered to his left and applied his brakes, but his truck nevertheless struck the rear of plaintiff's automobile. There is some discrepancy in the evidence as to the force of that collision, whether and how far plaintiff's car was pushed forward and the extent of the damage to her car. The evidence most favorable to defendants-appellees is that the damage was almost negligible, that the car was not pushed forward and that, at the scene, plaintiff did not complain of any injury in this accident, although she did mention that she had sustained a whip-lash injury to her neck in a previous accident.

Both drivers and defendant's passenger got out of their vehicles and were apparently out of them about twenty-minutes. During that time they exchanged information and defendant-driver went to a nearby filling station where he telephoned his father, an officer of the defendant corporation. Both drivers and defendant's passenger returned to their vehicles and drove from the scene without apparent difficulty. Later that day plaintiff went to the emergency room of Community Hospital, Indianapolis, where she was seen by the same general practioner-physician whose patient she had been since 1955, who had given her regular B-12 and other routine injections six days earlier, and who had attended her in connection with a similar automobile accident in which she was involved on February 20, 1963. He referred her to a neuro-surgeon to whom he had also referred her after the 1963 accident. Both these doctors testified at the trial and both expressed the opinion that plaintiff's present complaints were the result of the latest accident which had aggravated her pre-existing injury of 1963, which had ceased to give her trouble prior to the second injury.

The medical evidence most favorable to defendants was given by their witness, a neuro-surgeon who had examined

her only one time, nearly seventeen months after the second accident. The narrative summary of his testimony most favorable to defendants-appellees follows:[1]

"On October 25, 1966 I made an examination of the plaintiff for the Hartford Insurance Company. According to the histories taken, the patient complained of pain referrable to the neck, jaws, headaches, pain in both arms and shoulders and numbness and tingling in both hands and in her fingers. She dated the onset of these complaints to trauma sustained approximately three years before when the vehicle she was in was struck from behind as she was making a left turn off 38th Street at Emerson. She said that she sustained permanent damage at that time to her neck and that she had considerable numbness of her left hand. She improved following this traumatic incident but still had some symptoms which she felt became much worse following a second accident which occurred on June 9, 1965 when a truck hit the car which she was driving forceably from behind again. She stated she went on the day of the accident to Community Hospital where x-rays were made and after that received a great deal of treatment from Dr. John Nohl and was seen in consultation by a neuro-surgeon. She stated she had many allergies, that she had a thyroidectomy in 1957 and that she had also had surgery to her bladder, abdominal surgery ining cholecystectomy. An appendectomy had been done 19 years ago, and a rectal operation had been done two years before.

"I made a detailed neurological examination of Mrs. Kruss, and she was cooperative, intelligent and quite talkative and revealing in her conversation. I felt that the neck movements at the time of the examination were quite free and in no way was there any limitation or any abnormality of tone or contractal [contractile] state of those muscles. Examination of the reflexes were symmetrical on the two sides and were normal in amount. The lower reflexes were not quite as active as in the upper extremities, but it was still felt she was in normal limits. No pathological reflexes were observed. It was noted that there were many breaks in her skin which were typical of simple scratching. It was noted in doing tests for depression of the nerves in her arms that her pulse was quite rapid. On testing her arms with pin prick and light touch, I found no evidence of any im-

---

1. Except for a few deletions, this summary is taken verbatim from plaintiff-appellant's brief.

pairment anywhere. She was able to grip well with either hand, and the coordination seemed satisfactory, and the speed was equal on the two sides. Her gait was normal, and she was even able to walk one foot in front of the other without any indicated impairment. I felt on the basis of what I was able to see that there was no evidence of any impairment to the patient as a result of those alleged injuries of June 9, 1965. I felt that there was a great deal of nervousness involved, but I just didn't feel that there was any evidence of any traumatic disorder here at all. I did not find any muscle spasm in the plaintiff at the time of my examination. I found no evidence of myositis which is an actual inflammation of the muscles that can be determined by specific testing.

"I understand the history of Mrs. Kruss to have been that she had pain in the back of her neck, swelling in her lower jaws, headaches, pain in both arms and shoulders, numbness and tingling in both hands and fingers following her first accident in 1963 but that those symptoms improved and then following the second accident became much worse and persisted for sixteen months until the time I saw her. The fact of the persistence of symptoms from the time a person is struck by a truck does not necessarily indicate the person was injured in the accident. The symptoms here are general and could be the result of an enormous number of things. They are symptoms of often simple, general, nervous tension which can be entirely unrelated to accidents. We are hearing subjective complaints which have no visible link that I can see with the supposed traumatic event. The symptoms Mrs. Kruss enumerated to me could very well be the symptoms of nervousness and not symptoms of injury. I think it's common that people are nervous after an injury. A common result of a rear end collision is sprain or strain of the neck, but not injuries that produce serious neurological deficits. I cannot equate the symptoms in this case with injury to the neck."

We have dwelt on defendants' medical evidence in considerable detail to demonstrate our reason for rejecting plaintiff's contention that "the evidence is without conflict and leads to but one reasonable conclusion, to wit: that the appellant was entitled to recover a verdict against the appellees". Plaintiff, while conceding that this testimony negates permanent injury, nevertheless insists that the neuro-surgeon did not testify that plaintiff did not receive *some* injury. Her counsel calls atten-

tion to the neuro-surgeon's testimony in answer to the question whether he found anything which indicated that plaintiff "had cervical strain or sprain or any other injury at the time of the examination." The answer was

> "No. The *history* was suggestive that she had a strain, that the ligaments were stretched. By the time I saw her I felt quite clearly that those ligaments had repaired themselves and that the persistence of symptoms was simply on the basis of nervousness and other factors." (Emphasis added.)

Attention is also called to the same witness' testimony said to be a concession that plaintiff's nervousness was the result of the accident. In context, that testimony was as follows:

> "A.   In other words, we're talking about symptoms of nervousness. We're not talking here, I mean, the symptoms that she enumerated to me could very well be the symptoms of nervousness, not symptoms of injury. We're not involved here with disability incident to any deficit in neurological apparatus.
>
> "Q.   Now, nervousness itself could be caused, could it not, or result from an automobile collision?
>
> "A.   Uh, I think it's common that people are nervous after an injury. I think everyone is. I don't deny that."

In our opinion there is nothing in these fragments of this doctor's testimony which preclude the jury from inferring, from the whole of his testimony, that his opinion concerning plaintiff's complaints on the day of the examination was also true of her complaints on the day of the injury and during the intervening period. That opinion was this: "We are hearing subjective complaints which have no visible link that I can see with the supposed traumatic event." Plaintiff had the burden of proving both liability and damages. Although it seems to be tacitly admitted that she has successfully borne that burden with respect to liability, she has not done so with respect to damages. We cannot here say that the evidence is without conflict and can lead to but

one conclusion and that the jury has reached an opposite conclusion.[2]

Such is the background against which we must consider plaintiff-appellant's remaining grounds for new trial, bearing in mind the mandate of Indiana Rules of Procedure, AP 15 (D), that we shall not reverse any judgment "where it shall appear . . . that the merits of the cause have been fairly tried and determined in the court below."

Plaintiff's complaint[3] alleged plaintiff's injuries in great detail in six sub-paragraphs of rhetorical paragraph 6. At the close of all the evidence the court sustained defendants' motion to withdraw from the consideration of the jury one of those sub-paragraphs, which reads:

> "She suffered aggravation of pre-existing dorsal arthritis, a pre-existing cervical sprain and strain, and conditions of sinusitis and digestive spasm."

The motion was grounded on the assertion that there was no evidence of probative value to support the allegation. As to "dorsal arthritis . . . and conditions of sinusitis and digestive spasm" the want of evidence is tacitly conceded. As to "aggravation of . . . a pre-existing cervical sprain and strain", however, there was testimony by plaintiff's attending physician that the accident had "aggravated the previous neck condition that she had from a prior rear end collision."

Plaintiff's counsel acknowledges that even though the motion to withdraw was sustained, the allegation of aggravation was never actually withdrawn from the jury. No withdrawing instruction was ever given to the jury. Counsel urges, however, that the mere sustaining of the motion, even though the jury never knew anything about it, was prejudicial to plaintiff in that it "effectively prevented appellant's counsel from urging to the jury in final argument that appel-

---

2. *Quinn* v. *Peru Transit Lines, Inc.* (1967), 141 Ind. App. 111, 113, 226 N. E. 2d 546, 547.

3. As used herein, "complaint" refers to the third amended complaint on which the issues were closed.

lant should have been compensated for aggravation of the prior neck condition even though the jury might find that she sustained no other injury than the aggravation." He makes no attempt to explain why the court's final instruction No. 15 did not authorize him to make such an argument when it told the jury that in assessing the amount of plaintiff's damages, if any, they might "take into account . . . the aggravation of a previous injury or condition, if any".

Plaintiff next complains of the giving of defendants' instruction No. 3 which told the jury it could not award plaintiff damages "for hospital or medical bills . . . for the suffering or mental anguish of the husband . . . [or] for the value of any loss of services or companionship or consortium to the husband of the plaintiff." The instruction three times stated the reason to be "that the claim for these damages, if any, would rest in the husband of the plaintiff, and would be the subject of a separate lawsuit."

Plaintiff has not and does not contend that this instruction incorrectly states the law. Her objection to the trial court was:

". . . that there is no evidence in this cause that the husband of the plaintiff did sustain any of the three elements of damages set forth in Instruction No. 3. And for the further reason that there is no evidence in this cause that the husband of the plaintiff has brought any lawsuit for recovery of any one, two or three of the elements of damages set forth, and for the further reason that the Instruction infers to the Jury that the husband of the plaintiff can in the future bring not one, but three separate lawsuits for each of the three elements of damages, nowithstanding the fact that the statute of limitations has run in this case as to any future lawsuits, and for the final ground that by reason of all the foregoing that the giving of this Instruction would be prejudicial to the plaintiff by inferring that the plaintiff's husband can yet punish the defendant, or recover from the defendant for damages sustained as a result of the collision of June 9, 1965."

This instruction may well have lead the jury to believe that her husband could sue for these damages when, in fact, his

action was already barred by the statute of limitations. If the jury was thus mislead, the delusion was irrelevant. The pertinent part of the instruction was true: Plaintiff was not entitled to recover for such damages. If the jury erroneously thought her husband still could bring his action, that false belief did not prejudice plaintiff's case because she, herself, did not claim such damages. Nor can this instruction be condemned as being "on an issue not supported by the evidence."[4] Quite to the contrary, it made clear that these elements of damage were not issues in this case. Other instructions told the jury what could be the basis of an award of damages to the plaintiff. When all the negative and affirmative instructions on damages are considered together, it cannot be said that the jury was mislead to plaintiff's prejudice.

Most of what has just been said concerning the giving of defendants' instruction No. 3 is also relevant to plaintiff's objection to the giving of defendants' instruction No. 5, which told the jury that it should not award plaintiff any remote, imaginary, uncertain, conjectural or speculative damage "even though testified to by witnesses". Here, again, the plaintiff does not contend that the instruction is an incorrect statement of law, but that it implies that testimony was given which was not given. The qualifying phrase, "even though testified to by witnesses," is construed by plaintiff as implying that her witnesses testified to improper elements of damage. This, we view as a strained interpretation. The possibility that it may have had any improper effect on the jury is both remote and speculative.

The trial court gave defendants' Instruction No. 9, as follows:

---

4. Plaintiff-appellant cites three cases which state that it is error to give an instruction on an issue not supported by the evidence. In all of those cases the instruction authorized the jury to find for the plaintiff on a negligence or damage issue on which there was no evidence. *New York Central Railroad Company v. Knoll* (1965), 140 Ind. App. 264, 204 N. E. 2d 220, 4 Ind. Dec. 515; *Ewing v. Timmons* (1963), 135 Ind. App. 274, 193 N. E. 2d 497, 2 Ind. Dec. 288; *Evansville City Coach Lines, Inc. v. Atherton* (1962), 133 Ind. App. 304, 179 N. E. 2d 293.

"The Jury are instructed that the only parties to this lawsuit are the plaintiff and the defendants, and that the only issues presented for trial are those tendered by the pleadings between such parties; and in determining such issues the members of the Jury should not allow themselves to be influenced in any manner or to any extent by reason of the fact that upon their examination preliminary to acceptance as jurors they were questioned concerning their interest in or relation to any insurance company.

"By the giving of this instruction the Court is not in any way indicating whether the parties to this lawsuit had any insurance coverage or did not have such coverage, but is instructing you, ladies and gentlemen, that the matter of insurance is outside the issues in this case and must not be considered by you in determining the issues under all the evidence."

Plaintiff's trial court objection was on these grounds:

". . . that it is prejudicial to the plaintiff to infer to the Jury that the plaintiff may have had insurance coverage which is involved in this cause, or which, in part, has indemnified her for any of the damages of which she is complaining, and for the further reason that to suggest to the Jury that they should even consider, or should not consider the existence or the non-existence of insurance is unnecessarily and prejudicially again raises to the Jury the speculation as to whether or not insurance exists. And for the further reason that the Jury has been already instructed in preliminary instructions and again in the Court's Final Instructions as to who the parties to this lawsuit are, and as to what the issues are and as between whom the issues are joined, and therefore, this Instruction is repetitious."

In none of the cases cited to us was an instruction ever condemned for any of the reasons stated in the foregoing objection. As our Supreme Court said recently in *Pickett* v. *Kalb* (1968), 250 Ind. 449, 451, 237 N. E. 2d 105, 107, 14 Ind. Dec. 346, 348: "In *Miller* v. *Alvey* (1965), 246 Ind. 560, 207 N. E. 2d 633, we held that an instruction which *intimated* that the defendant carried no insurance was also improper, since it tended to arouse sympathy for the defendant because he personally would have to pay if a verdict was rendered

against him." (Emphasis added.) It was for the same reason that similar instructions were condemned in *White* v. *Evansville American Legion Home Association* (1965), 247 Ind. 69, 210 N. E. 2d 845, 6 Ind. Dec. 563, and in *Strand* v. *Pedersen Bros.* (1967), 140 Ind. App. 621, 224 N. E. 2d 689, 10 Ind. Dec. 273.

Although no case has yet said as much, it seems apparent that it is just as much an error for a trial court to intimate to the jury that the plaintiff has insurance as it is to intimate that the defendant has no insurance. This instruction, however, makes neither intimation. Consequently we reject plaintiff-appellant's argument that it is of a type which "the Supreme Court and this Court have uniformly declared . . . to constitute reversible error since the leading decision in *Miller* v. *Alvey*. . . ."

We also recognize that the mere mention of insurance in jury instructions in cases in which insurance has not previously been mentioned is undesirable and has been held to be reversible error.[5] But this is not such a case. Insurance was previously mentioned in this case. The first mention came in the examination of prospective jurors when defendants-appellees' attorney unsuccessfully attempted to interrogate them about their interest in, or connection with, Allstate Insurance Company (said in appellees' brief to have made a settlement with plaintiff-appellant for a prior accident). The second mention was volunteered by plaintiff herself when, as a witness in her own behalf, she was asked by defendants' attorney whether she had been examined by a Dr. Hetherington because of prior injuries. She answered the question with a "Yes", and then added, "My insurance company sent me there. He was not my doctor." There was no objection from anyone.

A third mention came from a defense witness, the examining neuro-surgeon whose testimony relevant to injury we have already summarized. Defendants' attorney asked him for whom

---

5. *Winot v. Saltz* (1967), 141 Ind. App. 226, 227 N. E. 2d 175, 10 Ind. Dec. 588.

he made the examination and he answered: "For the Hartford Insurance Company at the request of Mr. David M. Zeyen, Z-E-Y-E-N." On cross-examination plaintiff's attorney elicited the answer, "Probably", to his question, asking whether Hartford Insurance Company also paid for the examination.

Certainly every attentive juror knew, prior to the time final instructions were read, that: 1) plaintiff was insured at the time of her prior accident by a company which had a sufficient interest in her prior alleged injuries to have her examined; and, 2) Hartford Insurance Company, after the second accident, had her examined by a physician who was called by the defendants as their witness and that his testimony favored defendants. Under these circumstances,[6] we cannot say that the trial judge was wrong in concluding that the jury should be told that "the matter of insurance is outside the issues." Nor can we say, as against the objection which was made, that the trial judge committed error in approving this particular instruction. Although its wording may not be the best, it tends neither to create sympathy nor prejudice for or against either party since it makes no suggestion that either was or was not insured. It was not error to give this instruction over the objection made by appellant.

The trial court refused to give plaintiff's tendered instruction No. 2 which would have told the jury that following "another vehicle more closely than is reasonable and prudent, [etc.]" in violation of Burns IND. STAT. ANN. (1965 Repl.) § 47-2019 (a) "would constitute negligence on the part of the defendant", if defendant was guilty of such conduct "without excuse or justification." In view of the lack of conflict in the evidence as to how the collision occurred, leaving no apparent room for reasonable people to reach any conclusion other than that the defendant-driver was negligent in ways clearly alleged in the complaint and fully covered by other

---

6. Similar circumstances did not exist in any of the cited cases in which insurance instructions were condemned, but we do not mean to suggest that the instructions given in those cases would not have been condemned even if these same circumstances had there prevailed.

instructions, we fail to recognize any harm to plaintiff in the trial court's failure to add another possible act of negligence. It maligns the jurors' mentality to suggest that the evidence in this case could have convinced them that defendant-driver was following plaintiff's car too closely while failing to convince them that he did not keep a proper lookout.

The trial court refused to give plaintiff's tendered instruction No. 3 which called the jury's attention to the statute which requires a rear view mirror so located as to give the driver of a vehicle a view for at least 200 feet to the rear,[7] and that violation thereof would constitute negligence. What we have already said of the court's refusal to give plaintiff's instruction on following too closely also disposes of the error, if any, in refusing this instruction.

Because of defendants' repeated motions attacking plaintiff's attempts to plead impairment of earning capacity as an element of her damages, plaintiff's complaint was amended three times before the issues were finally closed. After plaintiff was ordered to make her second amended complaint more specific "by alleging the ultimate facts of her employment at the time this collision occurred, the duties of such employment, and whether or not she was able to perform the duties of such employment after the said accident", she circumvented that order in amending her complaint for the third time. She omitted from her third amended complaint any attempt to allege impairment of earning capacity. Having thus abandoned the issue of impaired earning capacity after it was raised and decided against her in the pleading stage, plaintiff has waived any right she may otherwise have had to demand that the issue be submitted to the jury.[8] Her claim of error

---

7. Burns IND. STAT. ANN. (1965 Repl.) § 47-2231.

8. Appellant was not employed at the time of the accident nor for many years prior thereto. Her argument points to evidence of various symptoms of physical impairment since the accident which evidence, she argues, entitled her to have the jury consider impairment of earning capacity as an element of her damages. All of that evidence appears to have been admissible under other allegations of her complaint. Consequently admission of such evidence (apparently without objection) is certainly no logical indication that the case was tried on any different the-

in refusing her instruction No. 9 must be rejected as an attempt to revive an issue waived before trial.

It appearing that the merits of the cause were fairly tried and determined in the court below, the judgment is

Affirmed.

Hoffman, P.J., and Sharp, J., concur; Pfaff, J., not participating.

NOTE.—Reported in 264 N. E. 2d 320.

ory of damages than that which the parties and the court so laborously hammered out in the pleading stage. It may here be noted that while practice under the new rules should not result in issues being formed (except in a very broad way) by the pleadings, the trial will still be restricted to issues and those issues should be srystalized in the pre-trial order, Rule TR 16(J); 2 Harvey, IND. PRACTICE at 174-5,