MARTIN FRANKFORT, LEONA FRANKFORT *v*. WILLIAM S.
OWENS, INDIANA BELL TELEPHONE CO., INC.,
MOTORCYCLE ESCORT SERVICE, INC.

[No. 2-375A53. Filed December 22, 1976. Rehearing denied February 8,
1977. Transfer denied May 10, 1977.]

*Earl C. Townsend, Jr., Townsend, Hovde & Townsend,* of counsel, of Indianapolis, for appellant.

*Charles Johnson, Marshall E. Williams,* of Indianapolis, *Richard O. Creedon,* of Indianapolis, *Glen E. Davis, Kitley, Schreckengast & Davis,* of Beech Grove, for appellees.

## STATEMENT OF THE CASE:

LOWDERMILK, J.—This case was transferred to this office from the Second District to help eliminate the disparity in caseloads among the Districts.

Plaintiffs-appellants, Martin and Leona Frankfort (Frankfort) brought suit against defendants-appellees, William S. Owens (Owens), Indiana Bell Telephone Company, Inc. (Indiana Bell), and Motorcycle Escort Service, Inc. (Escort), alleging that because of appellees' negligence Frankfort suf-

fered physical injuries as a result of being struck by a car. Judgment was entered on the jury's verdict in favor of appellees and this appeal followed.

We affirm.

## FACTS:

The facts necessary for our disposition of this appeal are as follows:

Frankfort was struck by an automobile driven by Owens as he was attempting to cross Washington Street on the south side of the Indianapolis City-County Building. At this location, Washington Street has four traffic lanes running east, and four traffic lanes running west, separated by a raised concrete center strip.

Frankfort was proceeding in a southerly direction across the street before he was struck while walking in a marked pedestrian crosswalk.

An Indiana Bell service truck was parked facing west in the third lane of westbound traffic with its front end partially in the pedestrian crosswalk. Indiana Bell had employed Escort to provide a uniformed employe to direct traffic around the parked vehicle and Escort's employee, dressed in uniform, was directing westbound traffic at the time when Frankfort was struck.

When Frankfort reached the Indiana Bell service truck he apparently took one step out into the fourth westbound traffic lane to ascertain if there was any oncoming traffic. At this point he caught sight of the Escort employee who was directing traffic around the parked service truck. Thinking all was clear, Frankfort proceeded across the fourth westbound traffic lane where he was struck and injured by a car being driven by Owens. Owens testified that he proceeded slowly around the parked Indiana Bell service truck only after he received the Escort employee's signal to proceed.

Further, that Frankfort stepped suddenly out in front of him and he was unable to avoid hitting Frankfort.

## ISSUES:

1. Did the trial court err in failing to grant Frankfort a new trial because of defense counsel's misconduct?

2. Was the verdict contrary to law?

3. Did the trial court commit reversible error in giving, and in refusing to give, certain instructions to the jury?

## DISCUSSION AND DECISION:

### ISSUE ONE:

Frankfort argues that the judgment of the trial court should be reversed because of certain prejudicial remarks made by Owens' defense counsel. The record discloses the remarks complained of were as follows:

"Q. Sam, you did not actually see the accident?

A. No.

Q. All you know is what someone told you?

A. All I told was what I saw.

Q. You said you saw another car. You said part of it was on the median strip?

A. Yes.

Q. Also part was in the cross walk then?

A. Yes.

Q. Do you have a good horse in the third race today?

*MR. TOWNSEND:* I object.

A. Yes, I have a couple.

\* \* \*"

Further,

"Q. Do you happen to remember what kind of car that was?

A. No.

Q. It is not important. Is that a fair accurate representation of my car as it was parked in that cross walk at that time?

A. Yes, I saw you take the picture.

*MR. TOWNSEND:* Plaintiff offers in evidence what has been marked for identification as plaintiffs' Exhibit No. 106.

*MR. JOHNSON:* Is that one of Mr. Townsend's five Rolls Royces?

A. No, he has gone broke—he has not had any cases now.

*MR. TOWNSEND:* I like a lot of cajolery. I think counsel should be admonished. I don't have five Rolls Royces. It creates the impression I might have. I wish the jury would be counseled. That was a very unfair thing for him to say.

*MR. JOHNSON:* How many do you have?

*MR. TOWNSEND:* I have one.

*MR. JOHNSON:* I know of two.

*MR. TOWNSEND:* Have him testify under oath. I think that is as flagrant violation of a lawyer as I have ever seen. I think the judge should admonish him.

*THE COURT:* I am going to admonish all attorneys I think it is getting to the point now where levity of any sort will be out of order. I think there was some reference to Defendant Indiana Bell Telephone library being sumptious. I think I will put an end to casual remarks at this time.

*MR. TOWNSEND:* The Rolls Royce I have is a 1961. It is not a very new car.

*MR. DAVIS:* That is a casual remark.

*THE COURT:* This has absolutely nothing to do with the case.

\* \* \*"

We are of the opinion that the remarks made by defense counsel, although unfortunate, do not require a reversal of this cause for the reason that Frankfort has failed to preserve any error for our review.

The steps necessary to preserve a point of error founded upon trial counsel's misconduct were stated in the case of *Raisor* v. *Kelly* (1972), 152 Ind. App. 198, 282 N.E.2d 871, 873 (transfer denied) as follows:

". . . In the language of a leading case, *Lawson* v. *Cole* (1953), 124 Ind. App. 89, 115 N.E.2d 134:

'Our courts have laid down the procedure which must be followed in order to reserve any question for review on appeal relating to misconduct of counsel. The steps in this procedure . . . are: (1) to promptly interpose and state their objection, if reasonably required, to the objectionable language or argument, and request the court to so instruct the jury as to counteract any harmful effect of such language or argument, and if granted, and such instructions were not sufficient to cure the error, follow such action by a motion to have the submission set aside; (2) to promptly object to the improper language or argument of counsel, and move to set aside the submission, stating reasons why the harm done could not be cured by any action the court might take in the matter.'

\* \* \*"

The reason for the rule requiring counsel to take the above steps was stated in *White* v. *Crow* (1964), 245 Ind. 276, 198 N.E.2d 222 at p. 227 as follows:

"Appellants could not gamble on the possibility of a favorable verdict by failing to move that the submission be set aside, and after an adverse verdict ask that it be set aside on appeal. *Gamble* v. *Lewis* (1949), 227 Ind. 455, 85 N.E.2d 629; *Chicago & Calumet Dist. Trans. Co.* v. *Vidinghoff* (1952), 122 Ind. App. 395, 103 N.E.2d 460, 104 N.E.2d 405."

In the case at bar, the record discloses that Frankfort neither moved to strike out the claimed improper remarks for the purpose of objection, neither did he move for a mistrial, nor did he give the trial court reasons why a jury admonishment would not be sufficient to correct any error occasioned by defense counsel's remarks.

Franfort cites *Troxel* v. *Otto* (1972), 153 Ind. App. 437, 287 N.E.2d 791, as authority for his contention that his cause

should be reversed on the foregoing ground. As we read *Troxel, supra,* that case holds that an attorney who repeatedly refers to matters *which have been excluded from evidence* by the trial court is guilty of *clear misconduct* with resulting prejudice to the adverse party being presumed. Also, such conduct would be a violation of the Code of Professional Responsibility, Canon 7, and Ethical Consideration 7-25. The record before us does not disclose such blatant misconduct as appeared in *Troxel, supra,* and therefore we are of the opinion that the rules laid down for preserving error in *Raisor* v. *Kelly, supra,* are controlling.

## ISSUE TWO:

Frankfort argues that the jury's verdict, and the judgment entered thereon, was contrary to law.

IC 1971, 9-4-1-87 (Burns Code Ed.) provides as follows:

"Pedestrian's right-of-way at crosswalks.— (a) When traffic control signals are not in place or not in operation, the driver of vehicle shall yield the right-of-way, slowing down or stopping if the need be, so to yield to a pedestrian crossing the roadway within a crosswalk when the pedestrian is upon the half of the roadway upon which the vehicle is traveling or when the pedestrian is approaching so closely from the opposite half of the roadway as to be in danger, but *no pedestrian shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close that it is impossible for the driver to yield.* This provision shall not apply under the conditions stated in section 84-6 [subsection (b) of 9-4-1-88].

(b) Whenever any vehicle is stopped at a marked crosswalk or at any unmarked crosswalk at an intersection to permit a pedestrian to cross the roadway, the driver of any other vehicle approaching from the rear shall not overtake and pass such stopped vehicle." (Our emphasis.)

Therefore, under this statute, a pedestrian can be contributorily negligent under the following circumstances. First, when he *leaves a curb* and walks or runs into the path of a vehicle which is so close that it is impossible for the driver to yield. Second, when he *leaves any*

*other place of safety* and walks or runs into the path of a vehicle which is so close that it is impossible for the driver to yield.

Frankfort contends that he was on the half of the roadway on which Owens' vehicle was traveling, and he did not suddenly leave a curb. Frankfort continues his argument by urging that since the parked Indiana Bell service truck was not a place of safety, and since there was no evidence tending to show him as being contributorily negligent the trial court erred in not finding the jury's verdict contrary to law. Frankfort cites a number of cases as tending to support his position which we will consider below.

The case of *Jung* v. *York* (1969), 75 Wash. 2d 195, 449 P.2d 409 was a case involving a pedestrian being hit by an automobile as she attempted to walk across a crosswalk with her two children.[1] The defendant therein failed to notice another automobile which had stopped to allow plaintiff to cross. In dealing with appellant's contention that the trial court committed error in withdrawing the issue of contributory negligence from the jury in that appellee should have seen him and heard the sound of his brakes and jumped out of the way the Washington court therein at page 412 stated:

"The ordinance requiring an approaching vehicle to stop when a vehicle ahead of it has stopped for pedestrians was obviously designed to protect the pedestrian whose view is obstructed by a vehicle which has stopped to let him pass. If this provision does not relieve him of the necessity of stopping and looking before proceeding into the adjoining lane, it serves no purpose.

*We are aware of cases in which we have held that a pedestrian passing in front of a parked bus must ascertain that the way is clear before proceeding in the path of approaching traffic. Rettig* v. *Coca-Cola Bottling Co.*, 22 Wash. 2d 572, 156 P.2d 914 (1945), and *Hamblet* v. *Soderburg*, 189 Wash. 449, 65 P.2d 1267 (1937), are cases of this kind. *In those cases, the bus had not stopped to allow*

---

1. Washington has a statute dealing with pedestrians crossing at crosswalks substantially the same as IC 1971, 9-4-1-87, *supra.*

*pedestrians to pass, but rather to discharge and take on passengers;* and in *Rettig* v. *Coca-Cola Bottling Co., supra,* this court expressly held that the statute (then Rem. Rev. Stat. Vol. 7A, § 6360-99, now RCW 46.61.235(4)), which is substantially the same as section 21.20.440 of the Traffic Code of the City of Seattle, did not apply." (Our emphasis.)

In the case at bar the Indiana Bell service truck had not stopped to allow pedestrians to pass, but rather to correct some defect in their underground cable. To this end, Indiana Bell had employed Escort to have a man in uniform stationed to the rear of their service truck to direct oncoming traffic around their parked vehicle. Also, flags, signs, and traffic cones were placed around the work area.

The appellant in *Jung* v. *York, supra,* also argued that the jury could have found plaintiff contributorily negligent in that she left a "place of safety" i.e., the area of the crosswalk in front of the vehicle which had stopped to allow her to pass. In disposing of this argument the Washington court therein at page 712 stated:

"When the statute refers to a 'curb or other place of safety,' it obviously means a place out of the lanes of traffic."

We are of the opinion that reasonable men could have found that this guarded working area was in effect taken out of the lanes of traffic, and therefore, that this working area created by Indiana Bell and Escort was a place of safety within the meaning of IC 1971, 9-4-1-87, *supra.* The record discloses that the Indiana Bell service truck was parked facing west. The Indiana Bell employees were in a manhole underground in front of the truck. The manhole was barricaded with a chain and pipe fence and two cones. Frankfort had stopped in front of the truck in the crosswalk before proceeding across the fourth westbound traffic lane of Washington Street where he was struck and injured by Owens' vehicle. The uniform Escort employee was at the rear of the truck directing westbound traffic around it.

Also, flags, men working signs, and traffic cones were located to the rear of the truck indicating the working area.

In *Wallace* v. *Doan* (1973), 155 Ind. App. 316, 292 N.E.2d 820, the evidence disclosed that one Back, after coming to a stop at a preferred intersection, pulled out and struck the vehicle being driven by Doan. Doan testified that as she was driving down the preferred street she did not look to her right or left, but only straight ahead. Back's administrator, Wallace, argued that Doan was under a duty to watch for vehicles emerging from non-preferred streets, and having failed to have done so, the trial court erred in removing the issue of contributory negligence from the jury. In disposing of this argument the court therein at page 825 stated:

". . . The law does not require a person lawfully operating a motor vehicle on a preferred street or highway to turn her head and look to the right and to the left before entering and traversing any non-preferred street intersecting the preferred highway. The only requirement of Doan was that she use due care at the time and place in question and act as a reasonable and prudent person would act under the same or like circumstances. She had a right to assume while so driving that any person about to enter or traverse the preferred Walnut Street would obey the law. I.L.E., Automobiles, Vol. 3, p. 437, § 83, states:

'In the absence of contrary indications, a motorist who has the right-of-way at an intersection may assume that vehicles approaching on different streets will yield the right of way, that such other vehicles will not suddenly violate a statute or rule of the road and that approaching vehicles are not traveling at an illegal speed and will not make an unexpected, unsignaled turn.'

Under these facts and circumstances it is our opinion that reasonable men could come to no conclusion oher than that Doan was not guilty of any negligence in the operation of her automobile which could in any way have proximately contributed to her injuries and, therefore, Doan was not guilty of contributory negligence as a matter of law and the court properly gave the instruction withdrawing the matter of contributory negligence from the jury."

We are of the opinion that *Wallace* v. *Doan, supra,* is still a correct statement of the law, but does not require us to reverse the case at bar. As we stated, *supra,* there were facts which would have justified reasonable men in concluding that the working area created by Indiana Bell and Escort was a place of safety. Furthermore, as will be discussed *infra,* there was some evidence which would have allowed reasonable men to have found Frankfort contributorily negligent.

Frankfort also cites *Hendrix* v. *Harbelis* (1967), 248 Ind. 619, 230 N.E.2d 315 and *Fields* v. *Hahn* (1944), 115 Ind. App. 365, 57 N.E.2d 955 as authority for his contention that the judgment of the trial court was contrary to law.

*Hendrix* v. *Harbelis, supra,* held that when a plaintiff proves he looked before stepping out into a pedestrian crosswalk, a prima facie violation of IC 1971, 9-4-1-87, *supra,* is made out. The burden was then upon the defendant to come forward and prove that compliance was impossible or excusable. Unlike the case at bar, *Hendrix* v. *Harbelis, supra,* did not involve the issue of whether plaintiff suddenly left *a place of safety* and proceeded into the path of an oncoming vehicle under circumstances where it would be impossible for the driver of the vehicle to yield.

In *Fields* v. *Hahn, supra,* the court held an instruction which told the jury that plaintiff-pedestrian was under a *continuous* duty to protect himself by keeping a *constant* lookout for oncoming vehicles, and a failure to do so *must* be considered negligence was held to be presumptively harmful. In explaining the error, the court therein at page 959 stated:

> "The test of contributory negligence, like that of negligence, is whether ordinary care was exercised under the circumstancs. *Hedgecock* v. *Orlosky,* 1942, 220 Ind. 390, 44 N.E.2d 93. The degree of care required is always the care which an ordinarily prudent person would exercise under the same or similar circumstances, and whether such care has been exercised in a given case is a question of fact

for the jury to determine. *Jones* v. *Cary*, 1941, 219 Ind. 268, 37 N.E.2d 944, *Harker* v. *Gruhl*, 1916, 62 Ind. App. 177, 111 N.E. 457, 459. In the case last cited it is said:

'It would have been error for the court to say as a matter of law that ordinary care required appellee to look and listen constantly, and it was also error to instruct the jury that ordinary prudence did not require him to do so.'

As a matter of law, a pedestrian who is lawfully using a public thoroughfare need not be constantly looking or listening to ascertain whether automobiles are approaching under the penalty that if he fails to do so and is injured his failure conclusively charges him with negligence."

Having determined that the working area created by Indiana Bell and Escort could reasonably be viewed as a "place of safety" within the meaning of IC 1971, 9-4-1-87, *supra,* it next becomes necessary for us to consider whether the trial court erred in not withdrawing the issue of contributory negligence from the jury under the facts in the case at bar. As was stated in *Wallace* v. *Doan, supra,* at page 825:

"The law in Indiana is that it is reversible error for the court to refuse to withdraw the question of contributory negligence *where there is no evidence or inference that there is contributory negligence. Northern Indiana Transit Co.* v. *Burk* (1950), 228 Ind. 162, 89 N.E.2d 905." (Our emphasis.)

We are of the opinion that there was some evidence from which the jury could have inferred Frankfort failed to exercise due care, and hence, was contributorily negligent when he stepped out from in front of the parked Indiana Bell service truck into the path of the vehicle being driven by Owens.

Frankfort's own testimony was such that the jury could have found that he failed to exercise due care for his own safety when he, without looking, stepped from in front of the parked Indiana Bell service truck into the path of the vehicle being driven by Owens.

For example, the record reveals the following testimony:

"Q. Well, by the time you walked out there two lanes, part of three lanes in the third lane, what was the condition of traffic coming west on Washington Street?

A. I could not tell. I mean I did not pay attention to the traffic on Washington Street at all. I was in the pedestrian lane. If traffic light had changed and traffic was coming through I did not know it."

There was other evidence that he did look before proceeding from in front of the parked Indiana Bell service truck. However, it is not for this court to weigh evidence or judge the credibility of witnesses. Therefore, we are of the opinion that the judgment of the trial court was not contrary to law in that there was evidence from which reasonable men could have concluded that Frankfort did not exercise due care for his own safety when he walked from in front of the parked Indiana Bell service truck into the path of the oncoming vehicle being driven by Owens. *Pokraka* v. *Lummus Co.* (1952), 230 Ind. 523, 104 N.E.2d 669; *Ott* v. *Johnson* (1974), Ind. App., 307 N.E.2d 523.

ISSUE THREE:

Frankfort argues that the trial court committed reversible error in the manner in which it instructed the jury.

Frankfort first argues that the trial court erred in refusing to give to the jury his Final Instructions Numbers 3, 4, 11, and 12. These instructions were as follows:

Number Three:

"I instruct you that at all times herein complained of there was in full force and effect a statute of Indiana providing insofar as pertinent, as follows:

'No person shall stop, stand, or park a vehicle . . . in any of the following places:

5. On a crosswalk

6. Within twenty (20) feet of a crosswalk at an intersection.'

If you find that Indiana Bell Telephone Company, Incorporated, stopped, stood or parked one of its vehicles on a

crosswalk or within twenty feet of a crosswalk at an intersection, then Indiana Bell Telephone Company, Incorporated, was negligent and if such negligence proximately caused or helped to bring about Martin Frankfort's being struck by an automobile, and if Indiana Bell's said negligence was the sole proximate cause of Mr. Frankfort's injuries then your verdict *must* be for Mr. Frankfort as against Indiana Bell." (Our emphasis.)

Number Four:

"I instruct you that at the time Mr. Frankfort was injured there was in full force and effect a statute of the State of Indiana providing, insofar as applicable, as follows:

'Between adjacent intersections at which traffic control signals are in operation, pedestrians shall not cross at any place except in a marked crosswalk. . . . the driver of a vehicle shall yield the right-of-way, slowing down or stopping if need be, so as to yield to a pedestrian crossing the roadway within a crosswalk when the pedestrian is upon the half of the roadway upon which the vehicle is traveling.'

If you find that Mr. Frankfort was in a marked crosswalk and that Mr. Owens negligently failed to yield the right-of-way to Mr. Frankfort and that such negligence was the sole proximate cause of Mr. Frankfort's injuries, then your verdict *must* be for Mr. Frankfort and against Mr. Owens." (Our emphasis.)

Number Eleven:

"I instruct you that if you find that Indiana Bell Telephone Company, Incorporated, was negligent and that Motorcycle Escort Service, Incorporated, was negligent and that William S. Owens was negligent and that the said negligence of all of them concurred to be the sole proximate cause of the injuries Mr. Frankfort suffered, then none of these defendants can interpose as a defense the fact that the negligence of the others contributed to the injury and Mr. Frankfort *should* recover against all three of such defendants and your verdict *should* be in his favor against all three of them." (Our emphasis.)

Number Twelve:

"I instruct you that a statute of this state applicable to the driving of the defendant William S. Owens at the time he struck Mr. Frankfort provided as follows:

'No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the condi-

tions and having regard to the actual and potential hazards then existing. In every event speed shall be so restricted as may be necessary to avoid colliding with any person on the highway.

The driver of every vehicle shall, consistent with these requirements, drive at an appropriate reduced speed when approaching and crossing an intersection and when special hazards exist with respect to pedestrians by reason of highway conditions.'

If you find that defendant William S. Owens without justification violated said statute and that said violation was the sole proximate cause of Mr. Frankfort's injuries, then your verdict *must* be against Mr. Owens." (Our emphasis.)

These instructions were given to the jury in substantially identical form as the Court's Final Instructions Numbers 17, 18, 22, and 23 with the following modifications. In Frankfort's Final Instruction Number 3 the word "must" was changed to "may." This same change was made to Frankfort's Final Instruction Number 4. In Frankfort's Final Instruction Number 11 the word "should" was changed to "may." Finally, in Frankfort's Final Instruction Number 12 the word "must" was changed to "may."

It is well established law in this jurisdiction that error cannot be predicated upon the trial court's failure to give a requested instruction when its subject matter is adequately covered by other instructions. *Hirsch* v. *Merchants Nat. Bank & Trust Co. of Indiana* (1975), 166 Ind. App. 497, 336 N.E.2d 833; *Brattain* v. *Herron* (1974), 159 Ind. App. 663, 309 N.E.2d 150.

We note also that our Indiana Supreme Court has generally condemned the use of mandatory instructions such as those tendered by Frankfort, *supra*. In the case of *White* v. *Evansville American Home Ass'n* (1965), 247 Ind. 69, 210 N.E.2d 845, the court therein at pp. 847-848 said:

"Mandatory instructions are not the best type of instructions to give to a jury. The jury can very easily conclude that the trial judge, for whom a jury has a great deal of respect, is urging them repeatedly to return a verdict for one of the parties. It has been said in *Baker* v. *Thompson* (1949), 337 Ill. App. 327, 335, 85 N.E.2d 924, 927:

"*\* \* \* When the court tells* them repeatedly that "the plaintiff cannot recover" or that "they must find the defendant not guilty", the jury may believe that the court is of the opinion that the verdict should be for the defendant. No one coming into our courts for redress of wrongs done them should be required to bear the onus of this disadvantage . . .'

It is our opinion that a court should reluctantly give a mandatory instruction and the tendering of such instructions by a party should be avoided. Where an instruction may be framed to state or cover the principle of law without the mandatory language therein to return a verdict for one or the other of the parties, it is not error for a trial court to refuse such a tendered mandatory instruction. . . ." (Original emphasis.)

See also *LaNoux* v. *Hagar* (1974), 159 Ind. App. 646, 308 N.E.2d 873; *Perry* v. *Goss* (1970), 253 Ind. 603, 255 N.E.2d 923.

Frankfort urges that a party is entitled to an instruction on his theory of the case against every defendant and the refusal to give such an instruction is error. As a general proposition this is certainly a correct statement of the law. *Barnes* v. *Deville* (1973), 155 Ind. App. 387, 293 N.E.2d 54. However, the statement is not a truism under all circumstances. In *Bundy* v. *Ambulance Indianapolis Dispatch, Inc.* (1973), 158 Ind. App. 99, 301 N.E.2d 791, it was said therein at p. 794:

"This court has recently held that it is erroneous for the trial court to refuse instructions which are supported by the evidence and are consistent with the theory of the case. *Barnes* v. *Deville* (1973), [155] Ind. App. [387], 293 N.E. 2d 54. Our Supreme Court held, in the case of *Gamble* v. *Lewis* (1949), 227 Ind. 455, 465, 85 N.E.2d 629, 634, as follows:

'. . . Under the facts in this appeal involving the doctrine of sudden peril, this instruction should have been given, and its refusal was error. *Zoludow* v. *Keeshin Motor Express* (1941), 109 Ind. App. 575, 34 N.E.2d 980. A refusal to give a requested instruction which correctly states the law applicable to the facts in issue is error *unless the substance of the requested instruction be covered by other instructions given to the jury. . . .*' " (Our emphasis.)

For the above reasons, we are of the opinion that the trial court did not err in refusing to give the jury Frankfort's tendered Final Instructions Numbers 3, 4, 11, and 12.

Frankfort's Final Instruction Number 6 would have in essence told the jury that the driver of a vehicle should exercise due care to avoid colliding with a pedestrian, and should give warning by sounding his horn when necessary. This instruction was patterned upon IC 1971, 9-4-1-89 (Burns Code Ed.). With minor variations, Frankfort's Final Instruction Number 6 was adopted and given to the jury as the Court's Final Instruction Number 19. For this reason, we find no error in the trial court's failure to give to the jury Frankfort's Final Instruction Number 6. See *Hirsch* v. *Merchants Natl. Bank & Trust Co. of Indiana* and *Brattain* v. *Herron, supra.*

Frankfort next argues that the trial court erred in refusing to give to the jury his Final Instructions Numbers 7 and 13.

These instructions would have withdrawn the issue of contributory negligence from the jury. As we have discussed in a preceding portion of this opinion, there was some evidence from which reasonable men could infer that Frankfort suddenly left a place of safety and proceeded to walk into the path of the vehicle being driven by Owens. Whether under the facts of the case at bar such conduct was tantamount to contributory negligence was a question of fact to be resolved by the jury. *Wallace* v. *Doan, supra,* at p. 825. For these same reasons we find the court did not err in giving to the

jury Court's Final Instruction Number 14 which defined contributory negligence.

Frankfort next argues that the trial court erred in giving to the jury Owens' Final Instruction Number 2. This instruction told the jury that if they found Frankfort had left a curb or other place of safety and walked or ran into the path of a vehicle which was so close that it was impossible for the driver to yield, then they could consider this conduct negligence. This instruction is patterned upon IC 1971, 9-4-1-87 (Burns Code Ed.) and is a correct statement of the law. Frankfort contends that said instruction is erroneous because it was outside the issues, there being no evidence that he left a "place of safety." We consider it unnecessary to again discuss the evidence which would have allowed reasonable men to infer that Frankfort did in fact leave a place of safety within the meaning of IC 1971, 9-4-1-87, *supra*. As Frankfort has repeatedly said in his briefs, "a party is entitled to have the jury instructed fairly on his theory of the case." *Barnes* v. *Deville, supra*.

Frankfort next contends that the jury was erroneously instructed when they were given, over objection, Owens' Final Instruction Number 3 which provided as follows:

"I instruct you that it is negligence for a person to fail to see that which he could have seen by the exercise of ordinary and reasonable care, and for that reason the law attaches the same legal consequences to a failure to see what was in plain view if, in fact, the person had seen.

Therefore, if you find that the defendant William S. Owens, was in plain view of the plaintiff and approaching so close as to be unable to stop or avoid colliding with the plaintiff, at the time the plaintiff stepped into the lane of traffic in which said defendant was travelling, then you *may* find that the plaintiff was negligent." (Our emphasis.)

We are of the opinion, that under the facts as presented in the case at bar, Owens' Final Instruction Number 3 was a cor-

rect statement of the law. The record discloses at one point that Frankfort testified he looked around the parked Indiana Bell service truck before proceeding into the fourth westbound lane of traffic on Washington Street. At another point, Frankfort testified that he paid no attention to the traffic on Washington Street as he was crossing. Further, as we have stated above, a pedestrian may be contributorily negligent if he leaves a place of safety and proceeds heedlessly into the path of an oncoming vehicle. Frankfort's failure to see the vehicle being driven by Owens was one factor the jury was instructed they could consider in resolving the issue of his alleged contributory negligence. As was said in the case of *Devine* v. *Grace Construction and Supply Company* (1962), 243 Ind. 98, 181 N.E.2d 862 at p. 866:

> "Generally, 'it is negligence to fail to see or hear that which you could see or hear, by the exercise of ordinary and reasonable care, and for that reason the law attaches the same legal consequences for not seeing or hearing as it does if in fact you did see and hear.' *Pfisterer* v. *Key, supra* (1941), 218 Ind. 521, 529, 530, 33 N.E.2d 330, 333. See also: *Bellefontaine Railway Company* v. *Hunter, Administrator* (1870), 33 Ind. 335, 360, 5 Am. Rep. 201."

Therefore, since there was some evidence in the record to lead reasonable men to believe that Frankfort did not exercise due care for his own safety, we are of the opinion that Owens' Final Instruction Number 3 was a correct statement of the law.

Frankfort contends that this instruction was erroneous under the reasoning of *Reel* v. *Beckner* (1971), 149 Ind. App. 663, 274 N.E.2d 548; and *Hill* v. *Jennings* (1971), 149 Ind. App. 241, 271 N.E.2d 473. Generally speaking, these cases can be cited for the proposition that it is error to instruct a jury that the law "presumes" that the doing, or the failure to do a particular act, is negligence. As was said in *Baltimore & O. R. Co.* v. *Rehyer et al.* (1939), 216 Ind. 545, 24 N.E.2d 284 at pp. 285-286:

"Considering the subject here under consideration, this court said in *Kelley* v. *Dickerson* (1938), 213 Ind. 624, 634, 13 N.E.2d 535, 539: 'The law of this state does not permit the indulgence in the presumption that a person will exercise his faculties for his own protection and safety, nor may it be presumed that he was or was not guilty of contributory negligence, nor that he failed to exercise ordinary care.' Consequently, when courts have undertaken to instruct juries that this or that may be presumed, without evidence of the fact, they have invariably committed error."

The instruction set out above, reasonably construed, tells the jury that it would not be improper for them to find Frankfort contributorily negligent if they found that he walked into the path of the vehicle being driven by Owens without exercising proper care to determine if a vehicle was approaching. Owens' Final Instruction Number 3 does not offend the rule laid down in *Reel* v. *Beckner* or *Hill* v. *Jennings, supra.*

Frankfort next argues that the trial court erred in giving the jury Owens' Final Instruction Number 4 which instructed the jury on the doctrine of "sudden emergency." He argues that since there was some evidence tending to show Owens was negligent, it was error to instruct the jury on sudden emergency.

Since there was evidence that Frankfort stepped from behind the parked Indiana Bell service truck under circumstances which made it impossible for Owens to stop before hitting him, it was not error for the court to instruct the jury on sudden emergency. In the case of *Faulkner* v. *Waterman* (1972), 153 Ind. App. 573, 288 N.E.2d 269 at p. 273, it was stated:

"In *McCraney* v. *Kuechenberg* (1969), 144 Ind. App. 629, 636, 248 N.E.2d 171, 175, in which an identical instruction was approved, Judge Sullivan said of contentions similar to those advanced here by appellant:

'It is well established that each party is entitled to have the jury instructed upon his particular theory of complaint or defense. *Scott* v. *Sisco* (1959), 129 Ind. App. 364, 156 N.E.2d 895; *Deming Hotel Co.* v. *Prox* (1968), [142] Ind.

App. [603,] 236 N.E.2d 613. Appellant contends that because there is some evidence from which a jury might properly infer negligence on the part of defendant-appellee, and because the Court gave instructions with reference to such alleged negligence, the doctrine of sudden emergency could not be properly applied. Appellant by this ingenious argument attempts to lift himself by his own bootstraps and arrives at the conclusion that *some* evidence of negligence is, by the instructions, miraculously converted into negligence as a matter of law. The mere fact that certain of appellant's tendered instructions were given by the court upon appellant's theories concerning statutory speed requirements and failure to exercise due care to avoid collision, does not and cannot preclude the giving of an instruction representing appellee-defendant's theory of the case, so long as such theory is supported by the evidence. *Kiger* v. *Arco Auto Carriers, Inc.* (1969), [144] Ind. App. [239], 245 N.E.2d 677.'" (Original emphasis.)

Frankfort next argues that the trial court erred in giving to the jury Indiana Bell's Final Instructions Numbers 5 and 6. These instructions dealt with a pedestrian's duty to exercise due care for his own safety. We have examined these instructions, and considering them in conjunction with all the other instructions given, find no error which would mandate a reversal of this cause.

Frankfort next argues that the trial court erred in giving to the jury Indiana Bell's Final Instruction Number 10. This instruction dealt with the weight the jury should accord an Indiana Bell practice manual entitled "Guarding Work Areas." The instruction told the jury that this was evidence in the case and did not have the force of law. Frankfort correctly contends that the violation of a company's working rules can be considered by the jury as tending to show a party's negligence. *Central Indiana Railway Co.* v. *Anderson Banking Co.* (1968), 143 Ind. App. 396, 240 N.E.2d 840. The complained of instruction did not inform the jury otherwise; rather, it told them that these work rules should be considered with all the evidence and the

court's instructions in deciding whether Indiana Bell was negligent. The instruction was a correct statement of the law.

Frankfort next argues that the trial court erred by giving Escort's Final Instruction Number 6 which provided as follows:

"Neither American States nor Hartford Insurance Companies are parties to this lawsuit and have no interest in the outcome. The only parties to this lawsuit are the named plaintiffs, and defendants, and the only issues presented for trial are those tendered by the pleadings between such parties; in determining such issues the members of the Jury should not allow themselves to be influenced in any manner or to any extent by reason of the fact that upon their examination, preliminary to acceptance as jurors, they were questioned concerning their interest in or relation to any insurance company.

By the giving of this instruction, the Court is not in any way indicating whether the parties to the lawsuit had any insurance coverage or did not have such insurance coverage, but is instructing you, Ladies and Gentlemen, that the matter is outside the issues of this cause, and must not be considered by you in determining the issues under all the evidence."

Frankfort timely objected to this instruction on the grounds that it was outside the issues, and it tended to create a sympathy in favor of the defendants.

The general rule in our jurisdiction that in an action for damages growing out of an automobile accident it is error to instruct the jury in such a manner as to intimate that one or more of the parties do or do not carry insurance. *White* v. *Evansville American Legion Home Association* (1965), 247 Ind. 69, 210 N.E.2d 845; *Miller* v. *Alvey* (1965), 246 Ind. 560, 207 N.E.2d 633.

We are of the opinion that the case at bar is distinguishable from *White* v. *Evansville* and *Miller* v. *Alvey, supra.* Unlike the instructions given in *White* and *Miller, supra,* the instruction given in the case at bar in no way intimated that one or more of the parties was or was not carrying liability insur-

ance. On the contrary, this instruction specifically told the jury that the court was not indicating whether either party had insurance. In *Kruss* v. *Sink & Edwards, Inc.* (1970), 148 Ind. App. 183, 264 N.E.2d 320 at p. 326, Judge White made the following comments concerning an instruction almost identical to the one presently under consideration:

"... As our Supreme Court said recently in *Pickett* v. *Kolb* (1968), 250 Ind. 449, 451, 237 N.E.2d 105, 107, 14 Ind. Dec. 346, 348: 'In *Miller* v. *Alvey* (1965), 246 Ind. 560, 207 N.E. 2d 633, we held that an instruction which *intimated* [original emphasis] that the defendant carried no insurance was also improper, since it tended to arouse sympathy for the defendant because he personally would have to pay if a verdict was rendered against him.' (Emphasis added.) It was for the same reason that similar instructions were condemned in *White* v. *Evansville American Legion Home Association* (1965), 247 Ind. 69, 210 N.E.2d 845, 6 Ind. Dec. 563, and in *Strand* v. *Pederson Bros. Co.* (1967), 140 Ind. App. 621, 224 N.E.2d 689, 10 Ind. Dec. 273.

Although no case has yet said as much, it seems apparent that it is just as much an error for a trial court to intimate to the jury that the plaintiff has insurance as it is to intimate that the defendant has no insurance. *This instruction, however, makes neither intimation. Consequently we reject plaintiff-appellant's argument that it is of a type which 'the Supreme Court and this Court have uniformly declared * * * to constitute reversible error since the leading decision in Miller v. Alvey * * *.'*" (Our emphasis.)

We think these comments are equally pertinent to the instruction given in the case at bar.

Furthermore, it was recognized in *Kruss* v. *Sink & Edwards, Inc., supra,* that the mere mention of insurance in jury instructions in cases in which insurance *has not been previously mentioned* is undesirable and has been held to be reversible error. *Winot* v. *Saltz* (1967), 141 Ind. App. 226, 227 N.E.2d 175. However, in the case at bar the subject of insurance was brought up by Frankfort during the course of voir dire. *Rust* v. *Watson* (1966), 141 Ind. App. 59, 215 N.E.2d 42; *Herman* v. *Ferrel* (1971), 150 Ind. App. 384, 276 N.E.2d 858.

We therefore are of the opinion that since Frankfort injected the subject of insurance into the course of this lawsuit during voir dire examination, no error was committed by the trial court in giving to the jury a *neutral instruction* telling them that insurance was outside the scope of the issues, and in no way intimating thereby that one or more of the parties was or was not covered by liability insurance.

Considering all of the instructions which were read to the jury as a whole, we are convinced that the jury was instructed on all the pertinent issues in the case at bar. As Justice Arterburn so wisely stated in *Hendrix* v. *Harbelis, supra,* at p. 319:

> "Instructing a jury is a most difficult and complex process. It is generally conceded that there has been an overemphasis placed upon the wording and refined meaning of instructions which far exceed their actual effect upon the jury. When an instruction has to be read and reread by a legally trained mind to catch a slight variation or error in its meaning, it is difficult to believe that a jury of laymen could have been misled. Words are mere signs or symbols of meaning and thought, which are never exact. We strive with inexact tools to work out refinements and precise lines in statements of thoughts and ideas, but are never able to reach exact perfection. In the writing of instructions, we are eternally confronted with attempts and failures at exactitude, and we must keep this human frailty in mind when we examine the language of instructions." (Citations omitted.)

Judgment affirmed.

Robertson, C.J. and Lybrook, J., concur.

NOTE.—Reported at 358 N.E.2d 184.